# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

**ROBERT H. RIVERNIDER, JR.,**
Petitioner, pro se,

v.

**KELVIN BROWN, Acting Warden, FDC Miami,**
Respondent.

Case No. **1:26-cv-22376-DMM**

FILED BY _CAS_ D.C.

MAY 2 0 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

---

## PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO SECOND AMENDED PETITION UNDER 28 U.S.C. § 2241 AND EMERGENCY REQUEST FOR RELIEF

Petitioner Robert H. Rivernider, Jr., proceeding pro se, respectfully submits this Reply to Respondent Acting Warden Kelvin Brown's Response to the Second Amended Petition under 28 U.S.C. § 2241 and Emergency Request for Relief.

Respondent asks this Court to summarily deny the Petition based on exhaustion, alleged improper use of § 2241, and BOP's conclusion that Petitioner's 36-month revocation sentence has been properly computed. Respondent's position should be rejected, or at minimum the Court should require Respondent and BOP to produce the complete sentence computation records, First Step Act records, designation records, administrative remedy records, legal-property records, electronic-message records, and relevant transcripts before ruling.

Petitioner's principal claim is that BOP is unlawfully treating the 36-month revocation sentence as if it exists in complete isolation from the original sentence and the approximately 80 months

1

Petitioner already served. Petitioner's position is that the original custody and the revocation custody must be treated as part of one aggregate custodial term for administrative computation purposes.

That is not merely Petitioner's theory. Congress has provided that multiple terms of imprisonment ordered to run consecutively or concurrently "shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c). The Second Circuit has held that BOP must aggregate a prisoner's sentence under § 3584(c) for purposes of administering First Step Act time credits. **Giovinco v. Pullen**, 118 F.4th 527, 529 (2d Cir. 2024). The Middle District of Florida has likewise recognized that § 3632 and § 3584(c) must be read together when determining how BOP administers FSA credits. **Silva v. Warden, FCC Coleman-Low,** No. 5:22-cv-629-WFJ-PRL, 2024 WL 98212, at *2 (M.D. Fla. Jan. 9, 2024).

The computation is straightforward:

- Original custody already served: approximately **80 months**;

- Revocation sentence imposed: **36 months**;

- Aggregate custodial term: **116 months**;

- 85% service point on 116 months: approximately **98.6 months**;

- Time already served by spring 2026: approximately **90 months**;

- Remaining time before FSA credits: approximately **8 to 9 months**.

Therefore, even before applying any First Step Act credits, Petitioner is far closer to release, prerelease custody, or home confinement than BOP's January 14, 2028 projected release date reflects.

After applying the First Step Act credits Petitioner contends were earned from December 21, 2018 through May 14, 2020, and from December 12, 2025 forward, Petitioner asserts that the entire aggregate sentence expired on or about **May 15, 2026**. Continued incarceration beyond that date is excessive and constitutes over-detention unless Respondent can produce a lawful computation showing otherwise.

Respondent's response does not meaningfully answer this core calculation. Instead, Respondent simply asserts that the revocation sentence is a new sentence, that BOP awarded only 170 days of prior custody credit, that the sentence commenced on December 12, 2025, and that Petitioner is projected to earn 162 days of good conduct time. Respondent also states that BOP projects a release date of January 14, 2028, and home detention eligibility of September 28, 2027.

Those assertions do not resolve the aggregate-computation issue. They merely show that BOP has chosen to compute the 36-month revocation sentence in isolation. That is the disputed issue.

---

## I. INTRODUCTION

This case concerns the execution of Petitioner's sentence. It involves BOP's calculation of the aggregate term of imprisonment, prior custody credit, Good Conduct Time, First Step Act credits, designation delay, projected release date, prerelease custody eligibility, and home confinement eligibility.

Those are proper § 2241 issues.

Respondent's response confirms that BOP has made sentence-computation decisions affecting Petitioner's liberty. Respondent states that BOP awarded 170 days of prior custody credit, calculated Petitioner's federal sentence as commencing December 12, 2025, projected 162 days of good conduct time, and now claims Petitioner began earning FSA credits only upon arrival at FCI Beckley on April 15, 2026. Respondent also claims BOP projects home detention eligibility on September 28, 2027.

But Respondent does not provide the full computation record. Respondent does not provide the SENTRY computation records, the full sentence monitoring calculation, the designation records, the First Step Act Time Credit Assessment, the PATTERN history, the inmate electronic messages Petitioner filed, the records showing why Petitioner was told he was "in transit," or the records showing how BOP decided to disregard the approximately 80 months Petitioner already served.

The Court should not summarily deny the Petition based on conclusory BOP assertions. The Court should require BOP to produce the computation records and explain why it refuses to calculate Petitioner's sentence under the aggregate 116-month framework.

## II. RELEVANT BACKGROUND

Petitioner was released on compassionate release on or about May 14, 2020, after serving approximately 80 months in federal custody. Petitioner then remained on supervised release under the District of Connecticut for approximately four and one-half years.

4

Petitioner's supervised release was scheduled to expire in less than six months when supervision was transferred to the Middle District of Florida. There was no apparent practical need to transfer supervision so close to expiration, particularly after the District of Connecticut had supervised Petitioner for approximately four and one-half years.

Petitioner contends that the timing of the transfer is relevant because the alleged violations were known or should have been known before the transfer, and because Petitioner's First Step Act credits, if properly applied, may have caused the supervised release term to expire earlier than the Government and BOP recognize.

Petitioner does not raise this issue merely to relitigate the revocation judgment in this Court. Petitioner raises it because BOP is now executing a sentence that depends on unresolved jurisdictional, computation, and credit issues. The execution of that custody is properly reviewable under § 2241.

On December 12, 2025, the Middle District of Florida imposed a 36-month revocation sentence with no supervised release to follow. At sentencing, the Court asked Petitioner how much time he had already served. Petitioner answered that he had served approximately 80 months. The Court then imposed the maximum revocation sentence and stated, in substance, "I would give you more if I could."

Petitioner understood that statement to mean that the Court was punishing him, at least in part, because he received compassionate release and did not serve the full original sentence. However, had the First Step Act existed and been properly applied during Petitioner's original custody,

5

Petitioner contends that he would have completed the sentence, or accumulated credits affecting supervised release, before the alleged violations and revocation proceedings occurred.

These facts make the full transcript and BOP computation record essential. The Court should not accept Respondent's conclusory computation position without requiring production of the full record.

---

## III. BOP'S COMPUTATION IS WRONG BECAUSE IT TREATS THE 36-MONTH REVOCATION SENTENCE IN ISOLATION

Petitioner's primary computation claim is not that the 36-month revocation sentence simply disappears. Petitioner's claim is that BOP cannot compute the revocation sentence as if the original 80 months of imprisonment never occurred.

Petitioner served approximately 80 months in federal custody on the original sentence before being released on compassionate release on or about May 14, 2020. The revocation sentence added 36 months of imprisonment. That results in a total custodial exposure of 116 months.

When the ordinary 85% service principle is applied to 116 months, the required custodial service is approximately 98.6 months. Petitioner has already served approximately 90 months. Thus, even without applying First Step Act credits, Petitioner is within approximately 8 to 9 months of the 85% service point on the aggregate custodial term.

BOP's projected release date of January 14, 2028 does not appear to account for this calculation. Instead, BOP appears to treat the 36-month revocation term as a wholly separate sentence, beginning the calculation anew and disregarding the 80 months already served.

Based on the aggregate 116-month calculation, application of Good Conduct Time, and application of the First Step Act credits Petitioner contends were earned and must be applied, Petitioner asserts that the entire sentence expired on or about **May 15, 2026**. Continued incarceration after that date is excessive unless Respondent produces a lawful computation proving otherwise.

That is the central dispute. Respondent's response does not answer it. Respondent simply says the revocation sentence is new and separate. But the question for this § 2241 case is whether BOP may ignore the original 80 months already served when calculating the administrative effect of the combined original and revocation custody.

Petitioner respectfully submits that BOP cannot do so.

---

## IV. SECTION 3584(c), GIOVINCO, SILVA, LLEWLYN, AND PROGRAM STATEMENT 5880.28 SUPPORT REVIEW OF THE AGGREGATE COMPUTATION

Section 3584(c) provides that multiple terms of imprisonment ordered to run consecutively or concurrently "shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 3584(c).

7

That statute matters here because BOP sentence computation is an administrative function. The Eleventh Circuit has described computing an inmate's credit for time served as BOP's administrative duty. **United States v. Llewlyn,** 879 F.3d 1291, 1295 (11th Cir. 2018).

The Second Circuit in **Giovinco v. Pullen,** 118 F.4th 527, 529 (2d Cir. 2024), held that BOP must aggregate a prisoner's sentence under § 3584(c) for purposes of administering FSA time credits.

The Middle District of Florida in **Silva v. Warden, FCC Coleman-Low,** No. 5:22-cv-629-WFJ-PRL, 2024 WL 98212, at *2 (M.D. Fla. Jan. 9, 2024), likewise recognized that § 3632 cannot be read apart from § 3584(c)'s aggregation mandate when BOP is performing administrative sentence functions.

BOP Program Statement 5880.28 is also relevant because it is BOP's sentence computation manual for sentences governed by 18 U.S.C. §§ 3585 and 3624. BOP's own sentence-computation policy is therefore part of the relevant administrative framework.

Respondent's response ignores this statutory and administrative framework. Respondent simply asserts that the revocation sentence is new and separate. But BOP still must perform an administrative sentence computation, and that computation must account for statutes governing aggregation, commencement, Good Conduct Time, and First Step Act credits.

---

**V. THE 85% OF 116-MONTH CALCULATION IS THE CENTRAL ISSUE**

The Court should require BOP to address the following calculation directly:

8

1. Petitioner served approximately **80 months** on the original federal sentence.

2. Petitioner received a **36-month** revocation sentence.

3. The combined custodial term is therefore **116 months**.

4. The ordinary 85% service point on 116 months is approximately **98.6 months**.

5. Petitioner has already served approximately **90 months**.

6. Therefore, Petitioner has approximately **8 to 9 months** remaining before any FSA credits, prerelease custody, home confinement, or other applicable credits are considered.

7. If FSA credits are applied, the remaining time may be eliminated or substantially reduced.

8. Based on Petitioner's calculation, once Good Conduct Time and applicable FSA credits are applied, the aggregate sentence expired on or about **May 15, 2026**.

9. Even if immediate release is not ordered, Petitioner should be much closer to prerelease custody or home confinement eligibility than BOP's September 28, 2027 home detention date reflects.

Respondent's response avoids this calculation. It treats the case as if Petitioner is merely demanding credit for old time. That is not accurate. Petitioner is challenging BOP's refusal to compute the sentence as an aggregate custodial term for administrative purposes and its refusal to explain why the 80 months already served are ignored in determining the 85% service point on the total custodial exposure.

The difference is substantial. Under BOP's position, Petitioner remains incarcerated until January 14, 2028. Under Petitioner's aggregate calculation, Petitioner is already within

approximately 8 to 9 months of the 85% service point before FSA credits are applied. After applying FSA credits, Petitioner contends the sentence expired on or about **May 15, 2026**.

That difference is a liberty issue. It should not be resolved without the full computation record.

## VI. SECTION 3624(b) GOOD CONDUCT TIME MUST BE PART OF THE COMPUTATION

Petitioner also relies on 18 U.S.C. § 3624(b), which governs Good Conduct Time. Section 3624(b) provides for good conduct time credit toward service of a sentence of imprisonment, subject to statutory requirements.

Respondent says BOP projects only 162 days of Good Conduct Time on the 36-month revocation sentence.

But that conclusion assumes the answer to the disputed question: whether BOP may compute the 36-month revocation term in isolation rather than as part of the aggregate 116-month custodial term.

Petitioner is not asking the Court to perform BOP's calculation in the first instance. Petitioner is asking the Court to require BOP to produce the computation records and explain why § 3624(b), § 3584(c), and the aggregate-sentence rule do not require a different result.

## VII. SECTION 3585(a) SUPPORTS PETITIONER'S ARGUMENT THAT BOP CANNOT RELY ON REGULATIONS TO DELAY SENTENCE COMMENCEMENT

Respondent suggests that Petitioner did not begin earning or receiving certain custody consequences until he arrived at a designated BOP facility. But 18 U.S.C. § 3585(a) provides that a sentence commences when the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

A regulation cannot override the statute. If BOP is relying on internal rules or regulations to delay sentence commencement until arrival at a designated institution, that position conflicts with § 3585(a)'s text.

Petitioner recognizes that FSA earning rules may contain separate regulatory language about when FSA credits may be earned. But that does not allow BOP to alter the statutory commencement rule for the sentence itself. Nor does it allow BOP to disregard custody time while Petitioner was awaiting transportation, designation, or transfer.

The Court should require BOP to explain:

1.  when Petitioner's revocation sentence commenced under § 3585(a);

2.  whether BOP treated Petitioner as "received in custody awaiting transportation" after sentencing;

3.  whether BOP improperly delayed computation consequences until arrival at FCI Beckley;

4.  whether BOP's calculation conflicts with the statutory text; and

11

5.   whether any regulation or Program Statement is being applied in a manner that overrides § 3585(a).

---

## VIII. FSA CREDITS ARE AN ADDITIONAL AND ALTERNATIVE GROUND FOR RELIEF

Petitioner's primary argument is the 85% calculation on the aggregate 116-month custodial term. However, First Step Act credits provide an additional and alternative basis for relief.

The FSA provides that an eligible prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. It further provides that a prisoner determined by BOP to be minimum or low risk over two consecutive assessments shall earn an additional 5 days for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A)(i)–(ii). BOP's regulation at 28 C.F.R. § 523.42(c)(2) likewise provides for the additional 5 days when the regulatory criteria are satisfied.

Petitioner was employed in a qualifying job at FCI Estill Satellite Camp in maintenance from 2018 to 2020. Petitioner contends that this work and/or programming should have generated FSA credit from December 21, 2018 through May 14, 2020, or at minimum should be reviewed and documented by BOP.

Respondent states that although Petitioner's computation listed him as ineligible for FSA credits, BOP has now confirmed with Petitioner's Unit Team at FCI Beckley that he is eligible to earn FSA credits toward prerelease custody.

12

That admission is significant. It shows that BOP's computation record was wrong or incomplete. If BOP was wrong about FSA eligibility, the Court should not simply assume BOP is correct about the projected release date, the home detention date, or the refusal to consider prior FSA credits.

Petitioner requests that the Court require BOP to produce:

1. records showing Petitioner's qualifying work in maintenance at FCI Estill Satellite Camp from 2018 to 2020;

2. records showing whether that work was treated as a productive activity or qualifying programming;

3. records showing whether Petitioner earned FSA credits from December 21, 2018 through May 14, 2020;

4. records showing whether those credits were applied, refused, suspended, forfeited, restored, or ignored; and

5. records showing whether Petitioner qualified for the additional 5 days per 30 days under § 3632(d)(4)(A)(ii) and 28 C.F.R. § 523.42(c)(2).

Petitioner further contends that FSA credits should be calculated from December 12, 2025, the date of revocation sentencing, because from that date forward Petitioner was in federal custody awaiting transportation and designation. Petitioner does not concede that BOP may delay FSA-related consequences until April 15, 2026 merely because BOP delayed designation to FCI Beckley.

13

Based on the aggregate 116-month calculation, the 85% service point, and the FSA credits Petitioner contends were earned and must be applied, Petitioner asserts that the entire sentence expired on or about **May 15, 2026**. Continued incarceration beyond that date is excessive unless Respondent produces a lawful computation showing otherwise.

FSA is therefore not the only issue. But it remains important because once the aggregate 116-month calculation is applied, FSA credits materially affect release, prerelease custody, or home confinement.

---

## IX. RESPONDENT'S EXHAUSTION ARGUMENT SHOULD BE REJECTED OR DEFERRED

Respondent argues that the Petition should be denied because Petitioner failed to exhaust BOP administrative remedies. That argument should be rejected or deferred.

First, exhaustion in a § 2241 case is not jurisdictional. It is an affirmative defense. This Court retains authority to decide whether exhaustion should be excused, deferred, or deemed inadequate under the circumstances.

Second, this case involves emergency over-detention. If BOP's calculation is wrong, Petitioner is serving unlawful excess custody. Administrative exhaustion cannot restore liberty time after it is lost.

Third, Petitioner did attempt to obtain administrative review and computation relief before seeking judicial intervention. While housed in Orlando, Petitioner sent **three letters to BOP**

14

**Grand Prairie** regarding his sentence calculation, designation, credits, and release computation. BOP Grand Prairie did not respond.

Fourth, while housed at FDC Miami, Petitioner sent multiple electronic messages to the Unit Team regarding his sentence computation and credits. Those electronic messages were never opened or answered. Respondent's filing does not include those electronic messages and does not account for them.

Fifth, Petitioner's original § 2241 petition was filed in the Middle District of Florida, Orlando Division, not in Miami. It was later transferred to this Court. Respondent's presentation improperly suggests that Petitioner simply bypassed BOP after arriving in Miami. That is not accurate. Petitioner had already sought computation relief from BOP Grand Prairie while in Orlando, and later attempted to communicate with the Miami Unit Team electronically.

Sixth, Petitioner did not have a meaningful opportunity to exhaust while at FDC Miami. Petitioner did not have an opportunity to speak to a counselor or case manager for more than a week after arriving in Miami. When Petitioner inquired about remedies or filing, he was told that staff would not accept anything because he was "in transit."

Seventh, Petitioner was not permitted to travel with his legal documents. Petitioner packed out approximately one week before transport, but he still has not received his legal property from Miami. That lack of legal property directly affected Petitioner's ability to prepare administrative remedies, respond to BOP, or litigate this case.

15

Eighth, the administrative remedy process is too slow to provide an effective remedy for an over-detention claim. Respondent describes a multi-level process requiring informal resolution, BP-9, BP-10, and BP-11 review.

In practice, that process can take more than six months, especially where staff refuse to process remedies, messages are not opened, legal property is missing, and the inmate is in transit.

Ninth, the Webb declaration supports futility rather than defeating it. If BOP Grand Prairie did not respond to three computation letters, if FDC Miami did not open Petitioner's electronic messages, and if staff refused to accept remedy materials because Petitioner was in transit, then the administrative process was not available in any meaningful sense.

The Court should therefore excuse exhaustion, defer ruling on exhaustion, or order Respondent to produce the full administrative record, including Petitioner's Grand Prairie letters, electronic inmate messages, transfer records, legal-property records, and any FDC Miami records showing that Petitioner was told he could not submit administrative remedy materials while in transit.

## X. GROUNDS 6 THROUGH 10 ARE PROPER § 2241 CLAIMS

Respondent argues that Grounds 1 through 5 attack the revocation judgment and are not properly brought under § 2241. Petitioner preserves those issues for direct appeal and collateral review and does not waive them.

But the Court should not dismiss Grounds 6 through 10 for lack of jurisdiction. Grounds 6 through 10 concern BOP's execution of the sentence, including:

16

1.  the aggregate 116-month computation;

2.  the 85% service point;

3.  prior custody credit;

4.  Good Conduct Time;

5.  First Step Act credits;

6.  projected release date;

7.  prerelease custody eligibility;

8.  home confinement eligibility;

9.  designation delay; and

10. the failure to provide a progress report and computation records.

Respondent's own response proves that BOP has made execution-of-sentence decisions on these issues. Respondent states that BOP awarded 170 days of prior custody credit, commenced the sentence on December 12, 2025, projected 162 days of Good Conduct Time, and calculated FSA eligibility from April 15, 2026.

These are not merely direct appeal issues. They are BOP execution issues.

Moreover, if the Court accepts Respondent's position that the revocation sentence is a completely new sentence, that position itself creates serious constitutional implications. If BOP and Respondent treat the revocation term as wholly disconnected from the original sentence, while the sentencing court imposed the maximum after asking how much original time Petitioner served, then the computation and custody raise serious due process, double punishment, and over-detention concerns. Those concerns strengthen the need for review; they do not eliminate jurisdiction.

17

At minimum, Grounds 6 through 10 should proceed under § 2241.

---

## XI. THE COURT SHOULD RULE ON THE MIDDLE DISTRICT OF FLORIDA'S JURISDICTION OR PRESERVE THE ISSUE

Petitioner respectfully requests that the Court not avoid the jurisdictional issue entirely.

Respondent argues that Grounds 1 through 5 are not proper under § 2241 because they attack the revocation judgment. Petitioner preserves those claims for direct appeal and collateral review. However, the jurisdictional issue also affects the execution of custody because BOP is presently executing the 36-month sentence imposed by the Middle District of Florida.

Petitioner contends that the Middle District of Florida lacked jurisdiction to revoke supervised release where the supervised release term had expired or should have expired, where the transfer occurred near the end of supervision, and where FSA credits and sentence-computation issues may have affected the supervision timeline before the violation proceedings.

If the Middle District of Florida lacked jurisdiction because supervised release had expired, because the transfer was invalid, or because FSA credits should have shortened the supervision term before the violation proceedings, then BOP is executing custody that rests on an unlawful judgment.

Alternatively, if Respondent's position is that the revocation sentence is a completely new sentence disconnected from the original sentence, then the Court should address the

18

constitutional consequences of that position, including due process, double punishment, improper sentence execution, and over-incarceration.

Therefore, the Court should either reach the jurisdictional issue or, at minimum, preserve it and decide the execution-of-sentence claims in Grounds 6 through 10.

## XII. THE PROGRESS REPORT CAN BE PRODUCED IMMEDIATELY

Petitioner has requested a progress report because it would show FSA status, programming status, risk assessment, needs assessment, release eligibility, and BOP's current calculation.

Case Manager Mr. Ball stated that he could provide the progress report in "three minutes." If BOP can generate the report in three minutes, there is no reason Respondent should oppose production or ask this Court to deny relief without it.

The Court should order Respondent to produce the progress report, sentence computation data, FSA assessment, PATTERN history, and related records. These records are directly relevant and easily available to BOP.

## XIII. THE TRANSFER TIMING AND SENTENCING REMARKS SUPPORT THE NEED FOR THE FULL RECORD

Petitioner's supervised release was scheduled to expire in less than six months. The District of Connecticut had supervised Petitioner for approximately four and one-half years. Yet supervision was transferred to the Middle District of Florida near the end of the supervision term.

There was no apparent legitimate need for transfer so close to expiration. The timing creates a serious question whether the transfer was sought for an improper tactical purpose or to place Petitioner before a different court after Connecticut had supervised him for almost the entire term.

Petitioner recognizes that Respondent may argue this issue belongs in the revocation appeal. Petitioner preserves the issue there. But the transfer timing is still relevant here because BOP is currently executing the resulting 36-month custody term.

The sentencing record is also important. At the December 12, 2025 revocation sentencing, the Court asked Petitioner how much time he had already served. Petitioner responded that he had served approximately 80 months. The Court then imposed the maximum 36-month revocation sentence and stated words to the effect of, "I would give you more if I could."

Petitioner understood that statement to mean that the Court was punishing him, at least in part, because he had received compassionate release and had not served the full original sentence. But if the First Step Act and sentence computation rules had been properly applied, Petitioner contends he would have completed the custodial portion, or received credits affecting the supervision and custody timeline, before the alleged violations and revocation proceedings.

20

These facts support the need for full transcripts and a complete BOP computation record. The Court should not deny relief based only on Respondent's characterization of Petitioner's arguments as frivolous.

---

## XIV. HOME CONFINEMENT AND PRERELEASE CUSTODY

Respondent argues that this Court cannot order BOP to place Petitioner in home confinement. Petitioner does not ask the Court to micromanage BOP's ordinary housing discretion.

Petitioner asks the Court to require BOP to correctly compute his sentence. Once BOP properly calculates the aggregate 116-month term, the 85% service point, Good Conduct Time, FSA credits, and prerelease custody eligibility, the home confinement calculation changes.

Respondent states that BOP currently projects home detention eligibility on September 28, 2027.

But Respondent has not produced the records supporting that date. Nor has Respondent explained how that date accounts for:

1. the 80 months already served;

2. the 36-month revocation term;

3. the aggregate 116-month calculation;

4. the 85% service point;

5. Good Conduct Time under § 3624(b);

6. FSA credits;

7. designation delay;

8.  the statutory commencement rule under § 3585(a); or

9.  prerelease custody eligibility.

The Court may order BOP to calculate Petitioner's sentence lawfully and to consider Petitioner

for prerelease custody based on a lawful computation. Petitioner requests that relief.

---

## XV. THE COURT SHOULD REQUIRE BOP TO PRODUCE THE FULL COMPUTATION AND ADMINISTRATIVE RECORD

Respondent asks the Court to accept BOP's conclusions without the full record. That is improper

where Petitioner claims over-detention.

The Court should require BOP to produce:

1.  the full sentence computation sheet;

2.  SENTRY sentence monitoring computation data;

3.  all records showing how BOP calculated the January 14, 2028 projected release date;

4.  all records showing how BOP calculated the September 28, 2027 home detention eligibility date;

5.  all records showing how BOP calculated the 162 days of projected Good Conduct Time;

6.  all records showing whether BOP considered the approximately 80 months previously served;

7.  all records showing whether BOP considered the aggregate 116-month custodial term;

22

8. all records showing whether BOP considered the 85% service point on the 116-month aggregate term;

9. all records showing whether BOP considered Petitioner's assertion that the entire sentence expired on or about May 15, 2026;

10. all designation records explaining the delay between sentencing and final designation;

11. all FSA Time Credit Assessment records;

12. all PATTERN risk assessment records;

13. all Needs Assessment records;

14. all records showing whether Petitioner earned FSA credits from December 21, 2018 through May 14, 2020;

15. all records showing Petitioner's qualifying maintenance work at FCI Estill Satellite Camp from 2018 through 2020;

16. all records showing whether any prior FSA credits were applied, refused, suspended, forfeited, restored, or ignored;

17. all records showing why Petitioner was originally listed as ineligible for FSA credits;

18. all records showing why BOP later confirmed that Petitioner is eligible for FSA credits;

19. all electronic inmate requests or messages filed by Petitioner concerning sentence computation, FSA credits, administrative remedies, designation, legal property, and release eligibility;

20. all FDC Miami records showing whether Petitioner was told he was "in transit" and could not submit administrative remedy materials;

21. all records concerning Petitioner's legal property packed out before transport from Miami and not yet returned;

23

22. the progress report that Case Manager Mr. Ball stated could be generated in "three minutes"; and

23. any records concerning Petitioner's three letters to BOP Grand Prairie regarding sentence calculation, designation, credits, and release computation.

Without these records, Respondent's response is conclusory. The Court cannot meaningfully review BOP's computation based only on Respondent's summary statement that BOP calculated the sentence correctly.

---

## XVI. REQUESTED RELIEF

For the reasons stated above, Petitioner respectfully requests that this Court:

1. **deny Respondent's request for summary denial;**

2. **excuse exhaustion or defer ruling on exhaustion** because Petitioner attempted to obtain BOP review by sending three letters to BOP Grand Prairie while housed in Orlando, sent electronic messages to the FDC Miami Unit Team that were never opened or answered, was told staff would not accept remedy materials because he was in transit, lacked access to his legal property, and faces emergency over-detention;

3. **hold that Grounds 6 through 10 are proper § 2241 execution-of-sentence claims** because they challenge BOP's sentence computation, Good Conduct Time, FSA credits, projected release date, prerelease custody eligibility, and home confinement calculation;

4. **aggregate the original sentence and revocation sentence for administrative computation purposes**, resulting in a total custodial term of **116 months**, consisting of approximately **80 months already served** plus the **36-month revocation sentence**;

5. **apply Good Conduct Time under 18 U.S.C. § 3624(b)** to the aggregate 116-month custodial term, resulting in an approximate 85% service point of **98.6 months**;

6. **find that Petitioner has already served approximately 90 months** and is therefore within approximately **8 to 9 months** of the 85% service point before application of First Step Act credits;

7. **find that, under Petitioner's aggregate 116-month calculation, application of Good Conduct Time and applicable First Step Act credits causes the sentence to expire on or about May 15, 2026**, making continued incarceration excessive and requiring immediate release unless Respondent proves a lawful contrary computation;

8. **order BOP to apply or properly calculate First Step Act credits from December 21, 2018 through May 14, 2020**, including credits arising from Petitioner's qualifying maintenance work at FCI Estill Satellite Camp;

9. **order BOP to calculate and apply FSA credits beginning December 12, 2025**, the date Petitioner was sentenced on the revocation and was in federal custody awaiting transportation and designation;

10. **order BOP to calculate FSA credits at 15 days per 30 days** based on Petitioner's aggregated sentence, risk history, prior programming, and eligibility for the additional 5 days under 18 U.S.C. § 3632(d)(4)(A)(ii) and 28 C.F.R. § 523.42(c)(2);

11. **order BOP to produce the complete sentence computation record**, including SENTRY records, sentence monitoring records, designation records, Good Conduct Time

records, FSA records, PATTERN assessments, Needs Assessment records, inmate electronic messages, administrative remedy records, legal-property records, and all records supporting the January 14, 2028 projected release date;

12. **order BOP to produce records supporting the September 28, 2027 home detention eligibility date** and explain how that date accounts for the 80 months already served, the 36-month revocation sentence, aggregation under § 3584(c), Good Conduct Time under § 3624(b), sentence commencement under § 3585(a), and FSA credits under § 3632(d)(4);

13. **order BOP to explain why Petitioner was originally listed as ineligible for FSA credits and why BOP later confirmed that he is eligible,** as Respondent states in its response;

1. **order production of the progress report** that Case Manager Mr. Ball stated could be generated in "three minutes";

2. **order production of the relevant unredacted transcripts,** including the December 12, 2025 sentencing transcript, because the sentencing remarks are directly relevant to Petitioner's claim that the sentence being executed is excessive, punitive, and dependent on unresolved computation and jurisdictional errors;

3. **grant immediate release** because, when the sentence is properly aggregated, Good Conduct Time is properly applied, and FSA credits are properly calculated, Petitioner is over-incarcerated and the sentence expired on or about May 15, 2026;

4. **alternatively, order immediate placement in prerelease custody or home confinement consideration** under a corrected computation;

5. **rule on the jurisdiction of the Middle District of Florida** to revoke supervised release where Petitioner contends the supervised release term had expired or should have expired

26

before the violation proceedings and where the transfer occurred near the end of supervision;

6. **if the Court accepts Respondent's argument that the revocation sentence is a completely new sentence**, rule that the "new sentence" theory implicates constitutional violations, including due process, double punishment, lack of proper notice, improper revocation jurisdiction, and the execution of custody based on a sentence divorced from the original judgment that created supervised release;

7. **order BOP to recalculate Petitioner's sentence, Good Conduct Time, FSA credits, prerelease custody eligibility, home confinement eligibility, and projected release date under the proper statutory framework**; and

8. **grant any other relief necessary to prevent unlawful over-detention.**

---

## XVII. CONCLUSION

Respondent's response does not justify summary denial. Respondent's position depends on treating the 36-month revocation sentence as if it exists in complete isolation from the approximately 80 months Petitioner already served. That approach produces a projected release date of January 14, 2028 and a home detention eligibility date of September 28, 2027, but Respondent has not produced the records necessary to support those dates.

Petitioner's primary claim is that BOP must calculate the custodial term based on the aggregate 116-month sentence: approximately 80 months already served plus the 36-month revocation sentence. Applying the ordinary 85% service point to 116 months results in approximately 98.6

months. Petitioner has already served approximately 90 months. Therefore, even before FSA credits are considered, Petitioner is much closer to release, prerelease custody, or home confinement than BOP's current calculation reflects.

After applying the FSA credits Petitioner contends were earned from December 21, 2018 through May 14, 2020, and from December 12, 2025 forward, Petitioner asserts that the entire aggregate sentence expired on or about **May 15, 2026**. Continued incarceration after that date is excessive and constitutes over-detention unless Respondent can produce a lawful computation showing otherwise.

The aggregation argument is supported by § 3584(c), Giovinco, Silva, Llewlyn, and the administrative nature of BOP sentence computation. FSA credits provide an additional and alternative basis for relief. Respondent admits that although Petitioner's computation listed him as FSA-ineligible, BOP now confirms he is eligible. That inconsistency further demonstrates why the Court should not accept BOP's computation without the full record.

Petitioner also attempted to obtain BOP review before and during this litigation. He sent three letters to BOP Grand Prairie while housed in Orlando, but received no response. He sent electronic messages to the FDC Miami Unit Team, but they were not opened or answered. He was told that remedy materials would not be accepted because he was in transit. He was transferred without his legal property and still has not received his Miami property. These facts defeat Respondent's claim that Petitioner simply ignored an available administrative remedy.

FSA credits provide an additional and alternative basis for relief. Petitioner seeks FSA credits from 2018 through 2020 based on qualifying work and programming at FCI Estill Satellite

28

Camp, and from December 12, 2025 forward because he was in federal custody awaiting transportation and designation after sentencing. Petitioner also seeks calculation at 15 days per 30 days under § 3632(d)(4)(A)(ii) and 28 C.F.R. § 523.42(c)(2).

Because this case concerns the execution of Petitioner's sentence, the risk of unlawful over-detention, and the legality of the custody BOP is presently executing, the Court should deny Respondent's request for summary denial, require production of the full computation and administrative record, order BOP to recalculate Petitioner's sentence under the proper aggregate framework, and grant immediate release or other appropriate relief.

Respectfully submitted,

Dated: May 18, 2026

*Robert Henry Rivernider, Jr*
ELECTRONIC SIGNATURE: /S/ Robert Henry Rivernider, Jr

With Permission

/s/ Robert Rivernider
Robert Rivernider, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, WV 25813

# CERTIFICATE OF SERVICE

I certify that on this 18th day of May, 2026, I placed a true and correct copy of the foregoing **Petitioner's Reply to Respondent's Response to Second Amended Petition Under 28 U.S.C. § 2241 and Emergency Request for Relief** in the US Mail, addressed to:

**Alicia E. Shick**
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394

Counsel for Respondent

Respectfully submitted,

*Robert Henry Rivernider, Jr*
ELECTRONIC SIGNATURE: /S/ Robert Henry Rivernider, Jr

With Permission

**Robert H. Rivernider, Jr.**
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, WV 25813



**UNITED STATES POSTAL SERVICE.**

# Click-N-Ship®

| P | usps.com<br>$9.32<br>US POSTAGE | 9405 5301 0935 5380 9779 51 0093 2000 0703 3401 |
|---|---|---|

 

U.S. POSTAGE PAID
Click-N-Ship

05/18/2026
0 lb 7 oz                    Mailed from 34785   309907933206060

## PRIORITY MAIL®

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011

Created 2026-05-17

### RDC 03

C028



SOUTHERN DISTRICT OF FLORIDA
CLERK OF THE COURT
701 CLEMATIS ST RM 202
WEST PALM BEACH FL 33401-5113

### USPS TRACKING #



9405 5301 0935 5380 9779 51

Legal Mail
CaseNo1-26-cv-22376DMM

