# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

**ROBERT H. RIVERNIDER, JR.,**
Petitioner, pro se,

v.

**WARDEN, FDC MIAMI,**
Respondent.

Case No. **1:26-cv-22376-DMM**



FILED BY _COS_ D.C.

MAY 2 8 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

---

**PETITIONER'S SUPPLEMENT TO REPLY TO RESPONDENT'S RESPONSE TO SECOND AMENDED PETITION UNDER 28 U.S.C. § 2241**

Petitioner Robert H. Rivernider, Jr., proceeding pro se, respectfully submits this Supplement to his Reply to Respondent's Response to the Second Amended Petition under 28 U.S.C. § 2241.

Petitioner submits this Supplement because he has now received additional information from the Bureau of Prisons Designation and Sentence Computation Center ("DSCC") that directly confirms the central issue in this case: BOP is calculating Petitioner's current custody only under Middle District of Florida Case No. 5:24-cr-138-TPB-PRL and is ignoring the original District of Connecticut case, No. 3:10-cr-222, the approximately 80 months Petitioner already served, the aggregate-sentence framework, and Petitioner's First Step Act credits.

Petitioner further informs the Court that, as of **May 26, 2026**, he had not received Respondent's response as ordered by the Court, even though Petitioner had only 10 days to reply. Petitioner therefore respectfully requests that the Court accept this Supplement as timely and necessary

1

because Petitioner is incarcerated, proceeding pro se, dependent on prison mail, and did not timely receive the Government's response.

Petitioner seeks only habeas relief in this proceeding: correction of the sentence computation, production of the full computation record, immediate release if the corrected computation shows the sentence has expired, or immediate prerelease custody/home confinement consideration under a lawful computation.

## I. PETITIONER DID NOT RECEIVE THE GOVERNMENT'S RESPONSE AS ORDERED

As of **May 26, 2026**, Petitioner had not received the Government's response as ordered by the Court. Petitioner understands that he had only **10 days** to reply.

Petitioner is incarcerated and dependent on prison mail and prison staff for receipt of legal materials. Petitioner should not be prejudiced by any delay in receiving the Government's filing. This is especially important because the Government's response and the BOP Webb declaration raise sentence-computation issues that directly affect Petitioner's liberty and possible over-incarceration.

Petitioner respectfully requests that the Court consider this Supplement together with Petitioner's Reply and not deem any reply deadline waived or expired due to delayed receipt of the Government's filing.

## II. THE DSCC LETTER CONFIRMS BOP IS CALCULATING ONLY CASE NO. 5:24-cr-138 AND IGNORING THE ORIGINAL CONNECTICUT CASE

2

Petitioner attaches as **Exhibit A** a letter from the Bureau of Prisons Designation and Sentence Computation Center ("DSCC"). Petitioner received this letter through his case manager on or about **May 21, 2026**.

The DSCC letter states that Petitioner was sentenced in **Case No. 5:24-cr-138-TPB-PRL** on December 12, 2025, to a 3-year term of confinement. It states that Petitioner's sentence commenced on December 12, 2025, that prior custody credit from June 24, 2025 through December 11, 2025 was applied, that Petitioner is projected to earn 162 days of Good Conduct Time, and that his projected release date is January 13, 2028.

The DSCC letter is important because it confirms that BOP is treating the current custody as a standalone 36-month revocation sentence under the Florida docket number. BOP does not address the original District of Connecticut case, **United States v. Rivernider, No. 3:10-cr-222**. BOP does not address the approximately **80 months** Petitioner already served before his May 14, 2020 compassionate release. BOP does not address whether the original custody and the 36-month revocation sentence should be treated as a 116-month aggregate sentence for administrative computation purposes. BOP does not address 18 U.S.C. § 3584(c). BOP does not address **Johnson v. United States**, 529 U.S. 694 (2000). BOP does not address First Step Act credits earned from December 21, 2018 through May 14, 2020. BOP does not address Petitioner's contention that he became over-incarcerated by May 2026.

BOP answered only the narrow question of whether Petitioner received custody credit from arrest through the date of revocation sentencing. Petitioner does not dispute that BOP says it applied credit from June 24, 2025 through December 11, 2025. The dispute is that BOP stopped there and ignored the central issue: whether the 36-month revocation sentence is legally and

3

administratively connected to the original Connecticut sentence and must be aggregated with the approximately 80 months already served.

This confirms that BOP did not meaningfully address Petitioner's actual computation claim.

---

### III. THE FLORIDA TRANSFER DID NOT CREATE A NEW UNDERLYING CRIMINAL CASE OR A NEW ORIGINAL SENTENCE

The Government appears to argue that because the Middle District of Florida opened Case No. 5:24-cr-138, the current custody should be treated as a new and separate sentence disconnected from the original Connecticut case. That is incorrect.

The original criminal case is **United States v. Rivernider, No. 3:10-cr-222**, in the District of Connecticut. The Florida case arose only because supervised-release jurisdiction was transferred. A transfer of supervised-release jurisdiction does not create a new underlying offense, a new conviction, or a new original sentence.

Under 18 U.S.C. § 3605, a court may transfer jurisdiction over a person on supervised release to another district court, and the receiving court may exercise the powers permitted by the supervised-release statutes. Section 3605 transfers jurisdiction over supervision. It does not erase the original case. It does not convert the revocation proceeding into a brand-new criminal prosecution. It does not allow BOP to ignore the sentence already served in the original case.

The Supreme Court held in **Johnson v. United States**, 529 U.S. 694, 701 (2000), that post-revocation penalties are attributable to the original conviction. That rule is critical here. The 36-

4

month sentence being executed by BOP exists only because of the original Connecticut conviction and original supervised-release term. It is not a new Florida conviction.

Therefore, the Florida docket number does not defeat Petitioner's aggregate-sentence argument. The Florida docket number may be administratively new, but the custody is legally derived from the original Connecticut case.

This also raises an important factual issue. If BOP is now calculating the sentence solely under Case No. 5:24-cr-138 and ignoring Case No. 3:10-cr-222, Petitioner respectfully submits that the record should be developed as to whether the Probation Office, including Officer Padilla, understood or anticipated that transferring the case to Florida would result in BOP treating the revocation sentence as a separate standalone sentence and ignoring the original 80 months already served. Petitioner does not have discovery on that issue, but the DSCC letter shows that this is exactly what BOP is now doing.

---

## IV. BOP'S POSITION IGNORES PROGRAM STATEMENT 5880.28, JOHNSON, § 3584(c), AND AGGREGATION AUTHORITY

The DSCC letter states that Petitioner's sentence was computed under federal statute and BOP Program Statement 5880.28. But BOP's response does not apply or even discuss the relevant portions of that Program Statement concerning revocation.

BOP Program Statement 5880.28 states that the date of offense for a prisoner whose supervised release or probation has been revoked shall be the date of the offense that led to the original sentence. It further provides that inmates shall be given prior custody time credits for time spent in official detention and explains how prior custody relates to a revocation term.

5

Petitioner relies on Program Statement 5880.28 because it demonstrates that BOP's own policy recognizes that a revocation sentence is connected to the original sentence and original offense date. BOP cannot cite Program Statement 5880.28 while ignoring the portions that connect supervised-release revocation to the original sentence.

Johnson likewise supports Petitioner's position because the Supreme Court held that post-revocation penalties are attributed to the original conviction.

Section 3584(c) also supports Petitioner's position. It states that multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

The Second Circuit in **Giovinco v. Pullen**, 118 F.4th 527, 529 (2d Cir. 2024), held that BOP must aggregate a prisoner's sentences under § 3584(c) when administering First Step Act time credits. The Middle District of Florida in **Silva v. Warden, FCC Coleman-Low**, No. 5:22-cv-629-WFJ-PRL, 2024 WL 98212, at *2 (M.D. Fla. Jan. 9, 2024), recognized that § 3632 and § 3584(c) must be read together in the FSA computation context. The Eleventh Circuit has recognized that computing credit for time served is BOP's administrative duty. **United States v. Llewlyn**, 879 F.3d 1291, 1295 (11th Cir. 2018).

Petitioner also relies on **United States v. Martin**, 974 F.3d 124, 136 (2d Cir. 2020), where the Second Circuit recognized that although a prisoner may have been sentenced more than once, the sentence is treated as an undivided whole for BOP's calculation of how long the prisoner remains in federal custody.

Together, these authorities show that BOP cannot simply point to the Florida docket number and ignore the original Connecticut sentence, the original 80 months served, and the aggregate-sentence framework.

## V. THE WEBB DECLARATION RELIES ON 28 C.F.R. § 2.35(b), WHICH DOES NOT CONTROL MODERN SUPERVISED RELEASE OR FSA CREDITS

Petitioner also supplements his Reply regarding the declaration of Aubrey Webb. The Webb declaration and/or Government response relies on 28 C.F.R. § 2.35(b) to argue that credits do not carry forward after release.

That reliance is misplaced.

Section 2.35(b) is a United States Parole Commission regulation concerning old-law parole and mandatory release. It provides that good-time credits used to determine mandatory release have no further effect to shorten parole supervision or imprisonment imposed for violating parole or mandatory release.

Petitioner is not an old-law parole or mandatory-release prisoner. Petitioner was serving modern federal supervised release under 18 U.S.C. § 3583. His revocation was a supervised-release revocation, not a parole or mandatory-release revocation administered by the United States Parole Commission.

Therefore, § 2.35(b) does not control Petitioner's case. It does not control modern supervised release under § 3583. It does not control First Step Act earned-time credits under § 3632(d)(4). It does not override BOP's administrative aggregation obligations under § 3584(c). It does not

7

control Good Conduct Time under § 3624(b). It does not allow BOP to ignore the approximately 80 months Petitioner already served in the original Connecticut case.

The Webb declaration therefore does not resolve the dispute. It relies on an old-law parole regulation that is not the governing rule for Petitioner's modern supervised-release revocation and FSA computation claims.

## VI. PETITIONER IS NOW OVER-INCARCERATED EVEN USING THE MOST GENEROUS CALCULATION IN FAVOR OF THE GOVERNMENT

Petitioner filed this § 2241 petition in February 2026 to prevent exactly what has now occurred: over-incarceration caused by BOP's refusal to aggregate the original sentence and revocation sentence and refusal to apply FSA credits.

Using the most generous calculation in favor of the Government, Petitioner is now over-incarcerated.

The calculation is as follows:

1. In the original Connecticut case, No. 3:10-cr-222, Petitioner served approximately **80 months** before immediate compassionate release on May 14, 2020.

2. From December 21, 2018 through May 14, 2020, Petitioner earned at least **7 months** of First Step Act Earned Time Credits using the conservative calculation of 10 days per 30 days for the first 6 months and 15 days per 30 days thereafter.

3. As of May 23, 2026, Petitioner had served an additional **11 months** in custody after the supervised-release violation arrest, for a total of approximately **91 months** served.

8

4.  As of May 30, 2026, Petitioner had served approximately **91 months and 7 days**.

5.  From April 15, 2026 through May 15, 2026, even accepting BOP's position that FSA earning began only on April 15, 2026, Petitioner earned at least **10 additional days** of FSA credits.

6.  Therefore, using the conservative calculation most favorable to the Government:

    o   91 months served;

    o   plus 7 months FSA credits from 2018 through 2020;

    o   plus 10 days FSA credits from April 15, 2026 through May 15, 2026;

    o   plus 7 additional days served by May 30, 2026;

equals approximately **98 months and 17 days**, or approximately **98.6 months**.

The 85% service point on the aggregate 116-month sentence is approximately **98.6 months**.

Therefore, even using a conservative calculation and giving the Government the benefit of the doubt, Petitioner has reached or exceeded the 85% service point on the aggregate sentence. Petitioner is now over-incarcerated.

This calculation is based on statute, BOP Program Statements, and case law. BOP and Respondent should be required to disprove it with an actual computation record, not conclusory statements.

The FSA statute provides that eligible prisoners earn 10 days of time credits for every 30 days of successful participation, and an additional 5 days for every 30 days if they meet the low/minimum risk requirements. 18 U.S.C. § 3632(d)(4)(A)(i)–(ii). BOP's regulation also

9

provides for the additional 5 days when the inmate is minimum or low risk and has maintained that status over the required assessments. 28 C.F.R. § 523.42(c)(2).

---

## VII. PETITIONER WAS ELIGIBLE FOR HOME CONFINEMENT OR PRERELEASE CUSTODY BEFORE THIS OVER-INCARCERATION OCCURRED

Petitioner filed the original § 2241 petition in February 2026 to prevent over-incarceration. At that time, Petitioner contended he was already eligible for home confinement or prerelease custody based on the aggregate sentence, Good Conduct Time, FSA credits, and the time already served.

Petitioner was sentenced on December 12, 2025. From that date forward, he was in federal custody awaiting transportation and designation. Petitioner contends that BOP should calculate FSA credits from that date forward, not merely from April 15, 2026.

Even if BOP disputes immediate release, the proper aggregate calculation would have made Petitioner eligible for home confinement or prerelease custody much earlier than BOP's current projected date. BOP's current calculation of a January 13, 2028 release date and later home confinement date is based on treating the 36-month Florida revocation sentence in isolation.

That is the error.

---

## VIII. THE CASE WAS TRANSFERRED; IT WAS NOT CHANGED INTO A NEW CRIME OR NEW UNDERLYING CASE

Petitioner respectfully emphasizes again that this case was transferred. It was not converted into a new crime.

The original criminal case was the Connecticut case, No. 3:10-cr-222. The Florida case, No. 5:24-cr-138, exists because supervised-release jurisdiction was transferred. Transfer does not change the original case into a new underlying offense. Transfer does not erase the original sentence. Transfer does not allow BOP to ignore the approximately 80 months already served.

Under § 3605, the receiving district receives jurisdiction over the person on supervised release. The receiving court may exercise the same powers over the releasee that the original court could exercise. But the receiving court's authority still derives from the original judgment and supervised-release term.

Therefore, BOP's use of only the Florida case number in the DSCC letter confirms the error. BOP is treating the administrative transfer docket as if it were a new criminal case disconnected from the Connecticut judgment. It is not.

## IX. REQUEST FOR SUPPLEMENTAL RELIEF

For the reasons stated above, Petitioner respectfully requests that this Court:

1.  accept this Supplement as timely because Petitioner had not received the Government's response as of May 26, 2026, despite the 10-day reply period;

2.  consider the attached DSCC letter as evidence that BOP is calculating Petitioner's sentence only under Middle District of Florida Case No. 5:24-cr-138 and ignoring the original Connecticut case, No. 3:10-cr-222;

3.  order Respondent and BOP to explain why the DSCC letter does not address the original Connecticut sentence, the approximately 80 months already served, § 3584(c), Johnson,

11

Program Statement 5880.28, FSA credits from 2018 through 2020, or Petitioner's over-incarceration calculation;

4. rule that the transfer from Connecticut to Florida did not create a new underlying criminal case, new original sentence, or new offense;

5. rule that the Florida revocation sentence derives from and remains legally connected to the original Connecticut conviction and supervised-release sentence;

6. rule that 28 C.F.R. § 2.35(b) does not control Petitioner's modern supervised-release revocation, FSA credits, Good Conduct Time, or BOP's aggregation obligations;

7. order BOP to aggregate the original custody and revocation custody as a 116-month aggregate term for administrative computation purposes;

8. order BOP to apply Good Conduct Time under § 3624(b) to the aggregate term;

9. order BOP to apply FSA credits from December 21, 2018 through May 14, 2020;

10. order BOP to apply FSA credits from December 12, 2025 forward;

11. order BOP to apply 15 days per 30 days where Petitioner qualifies under § 3632(d)(4)(A)(ii), 28 C.F.R. § 523.42(c)(2), and BOP Program Statement 5410.01;

12. find that Petitioner has reached or exceeded the 85% service point on the 116-month aggregate sentence and is now over-incarcerated;

13. order immediate release or, alternatively, immediate prerelease custody or home confinement placement under a corrected computation;

14. order Respondent and BOP to produce the complete computation record, including the SENTRY computation, DSCC records, FSA records, PATTERN assessments, Needs Assessment records, progress report, and all records supporting the January 13, 2028 projected release date;

12

15. rule on the jurisdiction of the Middle District of Florida to impose and execute the revocation sentence where Petitioner contends the supervised-release term had expired or should have expired before the violation proceedings;

16. order any other habeas relief necessary to correct Petitioner's sentence computation, prevent further over-incarceration, and ensure that BOP applies the correct statutory and administrative framework; and

17. grant any other relief necessary to prevent continued unlawful custody.

---

## X. CONCLUSION

The DSCC letter confirms Petitioner's central argument. BOP is calculating Petitioner's custody only under the Florida transfer/revocation docket, Case No. 5:24-cr-138, and is ignoring the original Connecticut case, No. 3:10-cr-222, the approximately 80 months already served, the aggregate-sentence framework, and FSA credits.

The Florida case number does not create a new underlying crime. It does not erase the original Connecticut sentence. It does not permit BOP to disregard the original 80 months served. The case was transferred for supervised-release purposes; it was not transformed into a new criminal prosecution.

Petitioner is now over-incarcerated even under a conservative calculation favorable to the Government. Petitioner has reached approximately 98 months and 17 days of custody and credits, which meets or exceeds the 85% service point on the 116-month aggregate sentence.

13

Petitioner seeks only habeas relief in this proceeding: correction of the sentence computation, production of the full computation record, immediate release if the corrected computation shows the sentence has expired, or immediate prerelease custody/home confinement consideration under a lawful computation.

The Court should accept this Supplement, require Respondent and BOP to address the actual aggregate-sentence issue, order production of the full computation record, and grant immediate release or other appropriate habeas relief.

Respectfully submitted,

Dated: May 26, 2026

*Robert Henry Rivernider, Jr*
ELECTRONIC SIGNATURE: /S/ Robert Henry Rivernider, Jr

With Permission

/s/ Robert Rivernider
Robert Rivernider, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, WV 25813

14

# CERTIFICATE OF SERVICE

I certify that on this 26 day of May, 2026, I placed a true and correct copy of the foregoing **Petitioner's Supplement to Reply to Respondent's Response to Second Amended Petition Under 28 U.S.C. § 2241** in the US Mail, addressed to:

**Alicia E. Shick**
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394

Counsel for Respondent

Respectfully submitted,

*Robert Henry Rivernider, Jr*
ELECTRONIC SIGNATURE: /S/ Robert Henry Rivernider, Jr

With Permission

**Robert H. Rivernider, Jr.**
Reg. No. 96006-004
FCI Beckley Satellite Camp
P.O. Box 350
Beaver, WV 25813

15

ESS FIRMLY TO SEAL



POUCH

# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL®

cted delivery date specified for domestic use.

stic shipments include $100 of insurance (restrictions apply).*

Tracking® service included for domestic and many international destinatic

d international insurance.**

used internationally, a customs declaration form is required.

does not cover certain items. For details regarding claims exclusions see the
Mail Manual at *http://pe.usps.com.*

rnational Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

## T RATE ENVELOPE
TE ■ ANY WEIGHT



## CKED ■ INSURED



S00001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2



To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP



# UNITED STATES POSTAL SERVICE®

Cli

P

usps.com
$11.12
US POSTAGE

9405 5301 0935 53

U.S. POSTA

05/25/2026
1 lb 0 oz

Mailed fro

## PRIORITY MAIL

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011



SOUTHERN DISTRICT OF F
CLERK OF THE COURT
701 CLEMATIS ST RM 202
WEST PALM BEACH FL 334

### USPS TRACKING #



9405 5301 0935 5384 189

LEGAL MAIL
CaseNo1-26-cv-22376DMM