# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**ROBERT RIVERNIDER,**
Petitioner, pro se,

v.

**WARDEN, FDC MIAMI,**
Respondent.



FILED BY_____ D.C.

JUN 15 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Case No. 1:26-cv-22376-DMM

**PETITIONER'S NOTICE OF SUPPLEMENTAL AUTHORITY, UPDATED SENTENCE COMPUTATION, AND REQUEST FOR IMMEDIATE RELEASE BASED ON BENSON v. WARDEN FCI EDGEFIELD AND DOJ OIG FIRST STEP ACT REPORT**

Petitioner Robert Rivernider, proceeding pro se, respectfully submits this Notice of Supplemental Authority, Updated Sentence Computation, and Request for Immediate Release in support of his pending Second Amended Petition under 28 U.S.C. § 2241, Reply, and prior Supplement.

The purpose of this filing is limited and specific. Petitioner brings to the Court's attention the Fourth Circuit's April 22, 2026 decision in Benson v. Warden FCI Edgefield, No. 24-6713, 2026 U.S. App. LEXIS 11454 (4th Cir. Apr. 22, 2026), and the May 28, 2026 report of the United States Department of Justice Office of the Inspector General concerning the Bureau of Prisons' use of First Step Act funds and implementation of First Step Act programs. Petitioner also updates the sentence-computation calculation, informs the Court that he is now over-incarcerated, and respectfully requests immediate release.

**I. BENSON IS SUPPLEMENTAL AUTHORITY SUPPORTING PETITIONER'S FSA CLAIM**

1

In Benson v. Warden FCI Edgefield, the Fourth Circuit addressed a federal prisoner's claim that BOP wrongfully refused to award approximately 150 First Step Act credits that he claimed were earned before he arrived at his designated BOP facility. Benson had been sentenced in December 2020 but was not transferred to his designated BOP facility until March 2022.

The district court dismissed without requiring a Government response, discovery, or a developed record. The Fourth Circuit vacated and remanded. Benson is important here because it rejects the idea that BOP's position concerning FSA credits before arrival at the designated institution can simply be accepted without proper statutory analysis and record development.

Benson further confirms that FSA-credit disputes require careful review of the statute, the prisoner's custody status, the claimed credits, and BOP's actual basis for denial. BOP cannot rely on its own delays in designation, transfer, assessment, or programming to categorically defeat a prisoner's statutory FSA claim without a proper record.

Petitioner respectfully submits that Benson applies here because BOP is refusing to calculate FSA credits for custody periods before Petitioner's final designation, including the period after Petitioner was taken into federal custody by the United States Marshals and held while awaiting sentence execution, transfer, designation, and programming availability.

## II. DOJ OIG REPORT CONFIRMS SYSTEMWIDE BOP FAILURES IN FSA FUNDING, PROGRAM DELIVERY, AND DATA RELIABILITY

Petitioner also submits as supplemental authority the May 28, 2026 report of the United States Department of Justice Office of the Inspector General, titled Evaluation of the Federal Bureau of Prisons' Use of First Step Act Funding and Implementation of First Step Act Programs at Its Institutions, Report No. 26-057.

This report is directly relevant to Petitioner's First Step Act argument. Petitioner contends that BOP cannot deny FSA credits for periods when Petitioner was in federal custody, in USMS custody, in transit, awaiting designation, or otherwise unable to access FSA programming because BOP failed to provide the required programming, assessment, institutional access, or reliable credit calculation.

The DOJ OIG report confirms that BOP's FSA implementation problems were not isolated. The OIG found serious deficiencies in BOP's use of FSA funds and implementation of FSA programs. The OIG found that BOP used $258.7 million in FSA funds to reimburse itself for providing inmates with free telephone calls without clear authority to do so. The OIG also found that this amount included approximately $106 million that BOP reimbursed itself in excess of the telephone-service costs BOP calculated it had incurred. The OIG further found that BOP was unable to obligate $16.8 million of FY 2022 FSA funding before the funds' availability expired.

The OIG also found programming failures directly relevant to Petitioner's claim. The report found that institutions offered significantly fewer FSA programs than expected because of limited staff availability, lack of instructional space, and lockdowns limiting inmate movement. The OIG also found that between FYs 2022 and 2024, 24 percent of inmates who received FSA time credits resulting in early release from BOP custody had not completed a single FSA program. The OIG further found significant limitations in BOP's FSA program data, impairing BOP's ability to accurately monitor FSA implementation and report progress.

These findings support Petitioner's argument that BOP cannot use its own failure to provide programming, assessment, designation, access, or reliable FSA data as a basis to deny statutory credits. Congress required BOP to implement FSA programming and credits. If BOP diverted,

3

failed to obligate, or mismanaged FSA funds, and if institutions offered fewer programs than expected, then Petitioner should not be penalized for lack of programming access while he was in custody.

This is especially important here because Petitioner was in continuous federal custody or federal holdover/transfer custody after being taken into custody by the United States Marshals, and BOP now seeks to deny FSA credits based on lack of programming, delayed designation, delayed assessment, or delayed arrival at a designated facility. The OIG report confirms that BOP's inability or failure to provide FSA programming is a BOP-created problem, not a prisoner-created problem.

Accordingly, the Court should consider the DOJ OIG report together with Benson, Giovinco, Gonzalez, and the First Step Act. The report supports Petitioner's request that BOP be ordered to calculate and apply FSA credits for the relevant custody periods or, at minimum, produce a complete record explaining why Petitioner should be penalized for BOP's failure to provide the programming and records Congress required.

## III. PETITIONER WAS NOT SENTENCED BASED ON A NEW CONVICTION; THE DECEMBER 12, 2025 SENTENCE WAS A MODIFICATION UNDER BARRUS

Petitioner was not sentenced on December 12, 2025 based on a new conviction. Petitioner was not sentenced based on a new criminal prosecution. Petitioner was sentenced based on alleged technical supervised-release violations in Middle District of Florida Case No. 5:24-cr-138-TPB-PRL, which was a transferred supervised-release revocation docket arising from the original Connecticut case, United States v. Rivernider, No. 3:10-cr-222.

4

Although Petitioner had a separate state conviction, the 36-month federal revocation sentence was not imposed as punishment for a new federal conviction. It was imposed after revocation of supervised release connected to the original Connecticut federal sentence.

Under Johnson v. United States, 529 U.S. 694 (2000), post-revocation penalties are attributed to the original conviction. Under Mont v. United States, 139 S. Ct. 1826 (2019), supervised release is part of the penalty for the original offense. Under United States v. Barrus, No. 23-10154, 2024 U.S. App. LEXIS 111 (11th Cir. Jan. 3, 2024), punishment imposed after revocation of supervised release is a modification of the original sentence, not punishment for a new criminal prosecution.

Therefore, the December 12, 2025 sentence was a modification of the original Connecticut sentence under Barrus. It was not a new standalone sentence disconnected from the original case. BOP is executing the modified original sentence and must compute it accordingly.

## IV. RELEVANT SENTENCE HISTORY

The original case is United States v. Rivernider, No. 3:10-cr-222, District of Connecticut.

Petitioner's sentence commenced on or about December 18, 2013, in Case No. 3:10-cr-222. Petitioner was sentenced to 144 months of imprisonment followed by 60 months of supervised release.

On or about May 12, 2020, the original sentence was modified by compassionate release, resulting in immediate release for time served. Petitioner was released on or about May 14, 2020, after serving approximately 80 months.

The sentence was later modified again after supervised-release revocation proceedings transferred to the Middle District of Florida. On December 12, 2025, the Middle District of Florida imposed an additional 36 months of imprisonment in Case No. 5:24-cr-138-TPB-PRL. That case was a supervised-release transfer/revocation docket arising from the original Connecticut case.

The December 12, 2025 revocation sentence was therefore a modification, continuation, or consequence of the original Connecticut sentence. It was not a new sentence based on a new conviction.

Under 18 U.S.C. § 3584(c), multiple terms of imprisonment must be treated for administrative purposes as a single, aggregate term of imprisonment. In Giovinco v. Pullen, 118 F.4th 527 (2d Cir. 2024), the Second Circuit held that BOP must aggregate sentences when administering First Step Act time credits. In Gonzalez v. Herrera, 151 F.4th 1076 (9th Cir. 2025), the Ninth Circuit held that FSA credits may be used to reduce the length of supervised release, confirming that earned FSA credits are not meaningless after a prisoner leaves physical custody.

## V. THE AGGREGATE SENTENCE STRUCTURE IS 116 MONTHS AND THE 85% SERVICE POINT IS APPROXIMATELY 98.6 MONTHS

Petitioner's total sentence structure is:

1. approximately 80 months served on the original Connecticut sentence before compassionate release;

2. plus 36 months imposed after supervised-release revocation;

3. equals an aggregate sentence structure of approximately 116 months.

6

Applying the ordinary 85% service point to 116 months produces approximately 98.6 months to serve.

BOP is currently refusing to calculate the sentence this way. Instead, BOP is treating the Middle District of Florida revocation docket as a new standalone 36-month sentence and ignoring the original Connecticut sentence and the approximately 80 months already served.

That is the central error.

## VI. TIME SERVED AS OF JUNE 13, 2026

Petitioner's actual custody calculation is as follows:

1.  approximately 80 months served through May 14, 2020;

2.  from June 24, 2025 through June 13, 2026, approximately 11 months and 18 days additionally served;

3.  total actual time incarcerated: approximately 91 months and 18 days, or approximately 91.7 months served.

Thus, before counting FSA credits, Petitioner has served approximately 91.7 months.

## VII. BENSON AND THE DOJ OIG REPORT SUPPORT FSA CREDITS FROM FEDERAL CUSTODY BEFORE ARRIVAL AT THE DESIGNATED FACILITY

Petitioner relies on Benson because it supports the proposition that BOP may not categorically deny FSA credits merely because a prisoner had not yet arrived at the designated BOP facility or had not yet received BOP's assessment. Benson requires record development and proper statutory analysis rather than automatic deference to BOP's interpretation.

7

Here, Petitioner was taken into custody by the United States Marshals on or about June 25, 2025. From that date forward, Petitioner was in federal custody in connection with the supervised-release sentence. If BOP uses this custody time for sentence credit and sentence computation, Petitioner respectfully submits that BOP must also address FSA credit eligibility for this same period.

The only distinction BOP may assert is the programming requirement. But BOP and the Government control custody, designation, assessment, transportation, and the availability of programming or productive activities. BOP should not be permitted to deny FSA credits based on its own failure to provide programming, assessment, or designation while Petitioner was in county jail, USMS custody, holdover status, transit status, or awaiting designation.

The DOJ OIG report further supports this point because it confirms that BOP's FSA programming failures, staffing shortages, lack of instructional space, lockdown limitations, and unreliable FSA data were systemwide problems. Petitioner should not be punished because BOP failed to provide programming, failed to timely assess him, failed to timely designate him, or failed to maintain reliable FSA records.

Under Benson and the DOJ OIG report, Petitioner claims FSA credits from June 25, 2025 through May 25, 2026. That period is approximately 11 months. At 15 days per 30-day period, that equals approximately 5 months and 15 days of FSA credits.

## VIII. BANKED FSA CREDITS FROM DECEMBER 21, 2018 THROUGH MAY 14, 2020

Petitioner also relies on Giovinco and Gonzalez for the proposition that earned FSA credits are not extinguished merely because BOP later changes custody status, transfers the inmate, or treats

8

credits as inconvenient. FSA credits are earned by statute and must be identified, calculated, and applied.

From December 21, 2018 through May 14, 2020, Petitioner was in BOP custody and was employed in a qualifying job at FCI Estill Satellite Camp in maintenance. That period is approximately 16 months and 24 days.

Petitioner contends that this period generated approximately 8 months of FSA credits, with 24 days carried over, based on the statutory FSA earning framework. Those credits were earned before compassionate release and should be treated as banked credits.

Under Giovinco, BOP must aggregate sentences when administering FSA credits. Under Gonzalez, excess FSA credits may have legal effect and are not worthless merely because the prisoner reached supervised release. Together, these cases support Petitioner's position that credits earned from 2018 through 2020 must be identified, calculated, and applied.

## IX. TOTAL FSA CREDITS

Petitioner's FSA calculation is as follows:

1. banked FSA credits from December 21, 2018 through May 14, 2020: approximately 8 months, with 24 days carried over;

2. Benson-based FSA credits from June 25, 2025 through May 25, 2026: approximately 5 months and 15 days;

3. total FSA credits: approximately 13 months and 15 days.

When these FSA credits are added to Petitioner's actual custody, Petitioner is over-incarcerated.

9

## X. PETITIONER IS OVER-INCARCERATED AND SHOULD BE IMMEDIATELY RELEASED

The aggregate sentence structure is 116 months.

The 85% service point on 116 months is approximately 98.6 months.

Petitioner has served approximately 91.7 months of actual custody as of June 13, 2026.

Petitioner has approximately 13 months and 15 days of FSA credits when banked credits from 2018 through 2020 and Benson-based credits from June 25, 2025 through May 25, 2026 are included.

Thus, Petitioner has exceeded the 98.6-month service point. Petitioner is over-incarcerated.

Petitioner filed this § 2241 petition to prevent this very result. BOP's refusal to aggregate the modified sentence and refusal to calculate FSA credits has resulted in continued custody beyond the lawful service point.

Petitioner respectfully requests immediate release.

## XI. BOP SHOULD NOT BE ALLOWED TO CREDIT JAIL TIME FOR ONE PURPOSE BUT IGNORE IT FOR FSA PURPOSES

BOP has credited Petitioner's custody from June 24, 2025 through December 11, 2025 as prior custody credit toward the revocation sentence. BOP also uses custody time to calculate the sentence and Good Conduct Time.

Petitioner respectfully submits that BOP cannot treat that same custody as real federal custody for sentence-credit purposes, but as nonexistent for FSA purposes. If Petitioner is in federal

10

custody serving or awaiting execution of a federal sentence, BOP must at least address FSA eligibility and cannot rely on its own failure to provide programming, assessments, transportation, or reliable records to deny credits.

Benson supports this point because the Fourth Circuit vacated dismissal where the prisoner alleged he earned FSA credits during post-sentencing detention before arrival at the designated BOP facility and required further analysis rather than categorical dismissal.

The DOJ OIG report also supports this point because it confirms BOP's own systemwide failures in providing and tracking FSA programming. BOP cannot rely on its own administrative failures to deny statutory credits.

## XII. REQUESTED RELIEF

For the reasons stated above, Petitioner respectfully requests that this Court:

1. accept Benson v. Warden FCI Edgefield, No. 24-6713, 2026 U.S. App. LEXIS 11454 (4th Cir. Apr. 22, 2026), as supplemental authority;

2. accept the DOJ OIG's May 28, 2026 First Step Act report, Evaluation of the Federal Bureau of Prisons' Use of First Step Act Funding and Implementation of First Step Act Programs at Its Institutions, Report No. 26-057, as supplemental authority;

3. order BOP to explain why Benson does not require recognition or calculation of FSA credits from the date Petitioner entered federal custody with the United States Marshals on or about June 25, 2025;

4. order BOP to explain why Petitioner should be denied FSA credits for periods in which BOP failed to provide programming, assessment, designation, or access to qualifying activities;

5. order BOP to calculate FSA credits from June 25, 2025 through May 25, 2026, totaling approximately 5 months and 15 days at 15 days per 30-day period;

6. order BOP to calculate and apply banked FSA credits from December 21, 2018 through May 14, 2020, totaling approximately 8 months, with 24 days carried over;

7. order BOP to recognize that Petitioner's total FSA credits are approximately 13 months and 15 days;

8. order BOP to recognize that Petitioner was not sentenced on a new conviction on December 12, 2025, but was sentenced on technical supervised-release violations, and that the 36-month revocation sentence is a modification, continuation, or consequence of the original Connecticut sentence under Barrus, Johnson, and Mont;

9. order BOP to aggregate the original 80 months served and the 36-month revocation sentence into a 116-month aggregate sentence structure;

10. order BOP to apply the 85% service point to the 116-month aggregate sentence, resulting in approximately 98.6 months to serve;

11. find that Petitioner has served approximately 91.7 months actual custody as of June 13, 2026;

12. find that, after applying FSA credits, Petitioner has exceeded the 98.6-month service point and is over-incarcerated;

13. order immediate release;

14. alternatively, order immediate prerelease custody, home confinement, or furlough under a corrected computation;

15. order BOP to produce the full sentence computation record, FSA records, PATTERN assessments, Needs Assessment records, progress report, records of programming and work history, waitlist records, and any record supporting BOP's refusal to apply FSA credits for the above periods;

16. order BOP to calculate FSA credits without penalizing Petitioner for BOP's failure to provide programming while Petitioner was in USMS custody, county jail, transit, holdover, or awaiting designation; and

17. grant any other habeas relief necessary to correct Petitioner's sentence computation and prevent continued unlawful custody.

## XIII. CONCLUSION

Benson confirms that BOP cannot categorically deny FSA credits merely because a prisoner had not yet arrived at the designated BOP facility or had not yet received BOP's assessment where the prisoner was already in custody and alleges qualifying participation or eligibility.

The DOJ OIG report further confirms that BOP's failure to provide and track FSA programming is a systemwide problem involving funding misuse, unobligated funds, limited staffing, lack of instructional space, lockdown limitations, and unreliable FSA data. Petitioner should not be punished for BOP's failure to provide the FSA programming and records Congress required.

Petitioner was not sentenced on December 12, 2025 based on a new conviction. He was sentenced based on alleged technical supervised-release violations. The 36-month revocation

13

sentence was a modification of the original Connecticut sentence under Barrus, not a new standalone sentence.

The original Connecticut sentence commenced in 2013, was modified by compassionate release in 2020, and was modified again by the 36-month revocation sentence in the transferred Florida supervised-release docket. Under Johnson, Mont, Barrus, § 3584(c), Giovinco, and Gonzalez, BOP must treat the sentence as connected to the original case and must aggregate the sentence for administrative computation purposes.

Petitioner has served approximately 91.7 months of actual custody as of June 13, 2026. Petitioner has approximately 13 months and 15 days of FSA credits when banked credits from 2018 through 2020 and Benson-based credits from June 25, 2025 through May 25, 2026 are included. That exceeds the 98.6-month service point on the 116-month aggregate sentence.

Petitioner is over-incarcerated and respectfully requests immediate release.

Respectfully submitted,

Dated: June 11, 2026

*Robert Rivernider*

With Permission

ELECTRONIC SIGNATURE:/s/ Robert Rivernider
Robert Rivernider, Pro Se

Robert Rivernider
Reg. No. 96006-004
FCI Beckley Satellite Prison Camp
P.O. Box 350
Beaver, WV 25813
Petitioner, pro se

14

# CERTIFICATE OF SERVICE

I certify that on this 11th day of June, 2026, a true and correct copy of the foregoing Petitioner's Notice of Supplemental Authority, Updated Sentence Computation, and Request for Immediate Release Based on Benson v. Warden FCI Edgefield and DOJ OIG First Step Act Report was served by United States Mail, postage prepaid, addressed to:

Alicia E. Shick
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394

Counsel for Respondent

Respectfully submitted,

*Robert Rivernider*

With Permission

ELECTRONIC SIGNATURE:/s/ Robert Rivernider
Robert Rivernider, Pro Se

Robert Rivernider
Reg. No. 96006-004
FCI Beckley Satellite Prison Camp
P.O. Box 350
Beaver, WV 25813

15

# ATTACHMENT A

# BOP DESIGNATION AND SENTENCE COMPUTATION CENTER RESPONSE

**Robert Rivernider**
c/o Beckley FCI
Federal Register No. **96006-004**
Case Number **5:24-cr-138-TPB-PRL (SRV)**

This letter is in response to your correspondence sent to the Bureau of Prisons, Designation and Sentence Computation Center, wherein you claim your federal sentence has been calculated incorrectly. You believe you are missing unspecified jail credit. You indicate you have been in custody since June 24, 2025. While you do not specify what time you contend is missing, you indicate you will be overserved according to the current calculation.

Following our review, you were sentenced on the above case on December 12, 2025, to a 3-year term of confinement. You were arrested on June 24, 2025, and remained in continuous custody since that date. Your sentence commenced on the date it was imposed, the earliest possible date, December 12, 2025. Prior custody credit beginning June 24, 2025, through December 11, 2025, was applied. You are projected to earn 162 days of good conduct time (GCT). As all prior custody credit has been applied to your federal sentence, you are not entitled to any additional credit.

Your projected release date is January 13, 2028, via GCT Release.

Your sentence has been computed as directed by federal statute, and Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984).

I trust this has addressed your concerns.

16

**Robert Rivernider**
**c/o Beckley FCI**
**Federal Register No. 96006-004**
**Case Number 5:24-cr-138-TPB-PRL (SRV)**


This letter is in response to your correspondence sent to the Bureau of Prisons, Designation and Sentence Computation Center, wherein you claim your federal sentence has been calculated incorrectly. You believe you are missing unspecified jail credit. You indicate you have been in custody since June 24, 2025. While you do not specify what time you contend is missing, you indicate you will be overserved according to the current calculation.

Following our review, you were sentenced on the above case on December 12, 2025, to a 3-year term of confinement. You were arrested on June 24, 2025, and remained in continuous custody since that date. Your sentence commenced on the date it was imposed, the earliest possible date, December 12, 2025. Prior custody credit beginning June 24, 2025, through December 11, 2025, was applied. You are projected to earn 162 days of good conduct time (GCT). As all prior custody credit has been applied to your federal sentence, you are not entitled to any additional credit.

Your projected release date is January 13, 2028, via GCT Release.

Your sentence has been computed as directed by federal statute, and Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984).

I trust this has addressed your concerns.

# ATTACHMENT B

# DOJ OIG FIRST STEP ACT REPORT

**Report:** United States Department of Justice Office of the Inspector General, **Evaluation of the Federal Bureau of Prisons' Use of First Step Act Funding and Implementation of First Step Act Programs at Its Institutions**, Report No. 26-057, issued May 28, 2026.

Petitioner submits this attachment as supplemental authority concerning BOP's implementation of First Step Act programming and time-credit administration.

The official DOJ OIG report found, among other things, that:

1. BOP used **$258.7 million** in FSA funds to reimburse itself for providing inmates with free telephone calls without clear authority;
2. BOP reimbursed itself approximately **$106 million** more than the cost BOP calculated it incurred for those telephone services;
3. BOP had serious weaknesses in financial controls over FSA spending;
4. BOP failed to obligate **$16.8 million** in FY 2022 FSA funding before the funds expired; and
5. BOP's FSA implementation had serious deficiencies affecting programming and institutional implementation.

Petitioner submits this report to support his argument that he should not be denied FSA credits because BOP failed to provide programming, assessment, designation, or reliable FSA records during periods when Petitioner was in federal custody, USMS custody, county jail, transit, holdover, or awaiting designation.

The report is publicly available from the United States Department of Justice Office of the Inspector General as **Report No. 26-057**, issued **May 28, 2026**.

**Official report title:**
**Evaluation of the Federal Bureau of Prisons' Use of First Step Act Funding and Implementation of First Step Act Programs at Its Institutions**

Because the DOJ OIG report is approximately 50 pages and Petitioner has limited copying access, Petitioner attaches the report-identification page and summary information and requests that the Court take notice of the publicly available DOJ OIG report: **Evaluation of the Federal Bureau of Prisons' Use of First Step Act Funding and Implementation of First Step Act Programs at Its Institutions**, Report No. 26-057, issued May 28, 2026.

Petitioner further requests that Respondent be required to address the report or produce the full report if Respondent disputes its contents.

17

S FIRMLY TO SEAL



SUSTAINABLE
FORESTRY
INITIATIVE
Certified Sourcing
www.sfiprogram.org
SFI-00061

PAPER
POUCH

**PRESS FIRMLY TO SEAL**

**PRIORITY MAIL**
**FLAT RATE ENVELOPE**
**POSTAGE REQUIRED**

# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY
# MAIL

ed delivery date specified for domestic use.

tic shipments include $100 of insurance (restrictions apply).*

Tracking® service included for domestic and many international c

l international insurance.**

used internationally, a customs declaration form is required.

does not cover certain items. For details regarding claims exclusions see the
Mail Manual at *http://pe.usps.com*.

national Mail Manual at *http://pe.usps.com* for availability and limitations of cove

# T RATE ENVELOPE
TE ■ ANY WEIGHT

# CKED ■ INSURED

To schedule free Package
scan the QR code.



USPS.COM/PICKUF

S00001000014

EP14F November 2025
OD: 12 1/2 x 9 1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; November 2025; All rights reserved.

**UNITED STATES POSTAL SERVICE.**

## Click-N-Ship®

*usps.com*
$11.12
US POSTAGE

9405 5301 0935 5391 3106 00 0111 2001 0003 3401



06/10/2026
1 lb 0 oz

Mailed from 34785   229362258941482

## PRIORITY MAIL®

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011

Created 2026-06-10
Flat Rate Envelope
**RDC 03**

C028

SOUTHERN DISTRICT OF FLORIDA
CLERK OF THE COURT
701 CLEMATIS ST
WEST PALM BEACH FL 33401-5101

### USPS TRACKING #



9405 5301 0935 5391 3106 00

LEGAL MAIL
CaseNo1-26-cv-22376DMM

