# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**ROBERT RIVERNIDER,**
Petitioner, pro se,

v.

**WARDEN, FDC MIAMI,**
Respondent.



FILED BY_____ D.C.

JUN 2 2 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

Case No. 1:26-cv-22376-DMM

## PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE AND EMERGENCY MOTION FOR EXPEDITED CONSIDERATION AND ORDER TO SHOW CAUSE

Petitioner Robert Rivernider, proceeding pro se, respectfully submits this combined reply to the Government's response and emergency motion for expedited consideration and order to show cause. Petitioner files this combined reply and motion because he was not able to meaningfully review the Government's response, attachments, and cited cases until June 15, 2026, when he was permitted limited supervised access in the case manager's office. The Government's response included approximately 700 pages of materials, many relating to the original 2013 proceedings, while BOP/DSCC continues to execute the December 12, 2025 revocation sentence as a new standalone 36-month sentence rather than a modification or continuation of the original Connecticut sentence.

Petitioner challenges BOP's execution and computation of the sentence, BOP's refusal to aggregate the modified sentence, BOP's refusal to apply First Step Act and prerelease custody credits correctly, and BOP's interference with Petitioner's ability to litigate through delayed legal mail, opened legal mail, withheld legal property, repeated transfers, restricted access to legal documents, delayed transcripts, denial of reasonable law-library access, delayed medical care, retaliation or apparent retaliation, and fear of further retaliation.

1

Immediate action is necessary. Petitioner has completed almost 92 months of incarceration. The corrected 85% service point on the aggregate 116-month sentence is approximately 98.6 months. Once properly calculated, Petitioner is already within the six-month prerelease/home-confinement window. BOP's unlawful computation has already caused Petitioner to lose Second Chance Act time and earlier home-confinement eligibility. Home confinement alone is no longer an adequate remedy. Petitioner requests immediate release and termination of custody as habeas relief, or alternatively as remedial, equitable, sanction-related, sentence-reduction, or compassionate-release-related relief.

## I. PRELIMINARY STATEMENT REGARDING DELAYED ACCESS

Petitioner arrived at FCI Beckley Satellite Prison Camp on April 15, 2026.

The Government's response and attachments were delivered to the institution on or about May 28, 2026. However, Petitioner was not able to meaningfully read or review the Government's response until June 15, 2026, when he was permitted limited supervised access in the case manager's office.

The response and attachments consisted of approximately 700 pages, including transcripts, psychological evaluations, computation documents, and other materials. Petitioner is incarcerated, pro se, and is not being allowed to keep the Government response, transcripts, docket sheets, computation records, or other legal materials in his possession. He can review many legal documents only during limited supervised access in the case manager's or counselor's office.

Petitioner therefore asks the Court to accept this combined reply and motion as timely and necessary because Petitioner could not previously review and respond to the Government's cited authorities and attachments.

## II. THIS CASE PROPERLY CHALLENGES THE EXECUTION OF THE SENTENCE UNDER § 2241

The Government argues that several grounds are not cognizable under § 2241 because they supposedly attack the revocation judgment. Petitioner respectfully disagrees.

Petitioner's central claim is that BOP/DSCC is executing the sentence incorrectly. The sentence-execution issue includes:

1. whether BOP/DSCC may treat the 36-month supervised-release revocation sentence as a new standalone sentence;

2. whether BOP/DSCC must recognize that the revocation sentence is a modification, continuation, or consequence of the original Connecticut sentence;

3. whether BOP/DSCC must aggregate the sentence for administrative purposes under 18 U.S.C. § 3584(c);

4. whether BOP/DSCC must account for the approximately 80 months already served on the original sentence;

5. whether BOP/DSCC must apply First Step Act credits and prerelease custody credits under 18 U.S.C. §§ 3632 and 3624;

6. whether BOP's refusal to calculate the sentence as a 116-month aggregate sentence has caused over-incarceration and loss of Second Chance Act and home-confinement time; and

3

7. whether BOP/DSCC must produce the complete computation records, DSCC correspondence, FSA records, SENTRY records, PATTERN assessments, Needs Assessments, travel records, and all records explaining why BOP is ignoring the May 14, 2020 computation sheet already in Petitioner's possession showing six years, seven months, and twenty-eight days served.

Those issues concern the execution of the sentence and are properly brought under § 2241. Petitioner is not asking this Court to vacate the revocation judgment in this filing. Petitioner asks this Court to correct BOP's execution of the sentence and to prevent continued unlawful custody.

## III. EXHAUSTION SHOULD BE EXCUSED OR DEEMED UNAVAILABLE

The Government argues that Petitioner failed to exhaust BOP administrative remedies. That argument should be rejected or excused.

Exhaustion in a § 2241 case is not jurisdictional. It is a judicially imposed requirement that may be excused where exhaustion is unavailable, futile, inadequate, or where further delay would cause irreparable injury.

Petitioner attempted to obtain sentence-computation review. BOP/DSCC failed to promptly and correctly address the issue. When DSCC eventually addressed the computation, it treated the sentence only as a 36-month sentence in the Florida revocation case and failed to address the original Connecticut case, the approximately 80 months already served, the May 14, 2020 computation sheet, Johnson, Mont, Barrus, § 3584(c), Giovinco, Gonzalez, Program Statement 5880.28, or the corrected 116-month aggregate calculation.

4

Exhaustion was also made practically unavailable by repeated transfers, delayed legal mail, opened legal mail, withheld legal property, lack of meaningful law-library access, inability to keep legal documents, and the fact that Petitioner could not meaningfully review the Government's 700-page response until June 15, 2026.

Further administrative delay would cause irreparable prejudice. Petitioner has already served almost 92 months of actual incarceration. The corrected 85% service point on the 116-month aggregate sentence is approximately 98.6 months. Once properly calculated, Petitioner is already within the six-month prerelease/home-confinement window. BOP's erroneous computation has already cost Petitioner meaningful Second Chance Act and home-confinement time.

Accordingly, exhaustion should be excused, deemed unavailable, or treated as satisfied.

## IV. THE GOVERNMENT'S AUTHORITIES ARE DISTINGUISHABLE

The Government relies on several authorities, but none controls the sentence-computation issue presented here.

First, the Government relies on 28 C.F.R. § 2.35(b). That regulation concerns parole or mandatory release, not modern supervised release under 18 U.S.C. § 3583, sentence aggregation under 18 U.S.C. § 3584(c), or First Step Act credits under 18 U.S.C. § 3632. A parole regulation cannot override Johnson, Mont, Barrus, § 3584(c), Giovinco, Gonzalez, or Program Statement 5880.28.

Second, the Government relies on Wallace to argue that a revocation sentence is a new sentence and that prior credits ended when Petitioner was released. Wallace is a non-binding district court case. It does not address the full aggregate-sentence issue presented here, including the May 14,

2020 computation sheet showing six years, seven months, and twenty-eight days already served, the Government's own reliance on 2013 original-case materials, the lack of a new PSR or new sentencing package, § 3584(c), Giovinco, Gonzalez, Johnson, Mont, and Barrus.

Third, the Government relies on Miller v. United States, 2023 WL 5651847 (W.D. Wis. Aug. 31, 2023), for the proposition that BOP may not apply unused FSA time credits from a prior term to a revocation term. Miller is distinguishable. Petitioner is not merely asking to carry over unused FSA credits from a completed sentence. Petitioner is challenging BOP's refusal to recognize that the 36-month revocation term is a modification or continuation of the original Connecticut sentence and must be executed under the corrected aggregate sentence structure.

Fourth, the Government relies on White v. Sproul, 2021 WL 1854642 (S.D. Ill. May 10, 2021), and Jamison v. Warden, Elkton Federal Correctional Institution, 2019 WL 5690710 (S.D. Ohio Nov. 4, 2019). Those are non-binding district court decisions and do not overcome Johnson, Mont, and Barrus. Under Johnson, post-revocation penalties are attributable to the original conviction. Under Mont, supervised release is part of the penalty for the original offense. Under Barrus, revocation punishment is a modification of the original sentence, not punishment for a new criminal prosecution.

Fifth, the Government relies on Sharma v. Peters, 756 F. Supp. 3d 1271 (N.D. Ala. 2024), to argue that Petitioner cannot earn FSA credits before arrival at the designated institution. Sharma is non-binding and does not address the full facts here: Petitioner was in continuous federal custody, BOP and the United States Marshals controlled transfers and designation, Petitioner was moved repeatedly, and BOP's own delays and programming failures prevented earlier FSA application. Benson v. Warden FCI Edgefield and the DOJ OIG First Step Act report support the

6

need for statutory analysis and record development before accepting BOP's categorical denial of credits based on designation timing.

Sixth, the Government relies on placement-discretion cases such as McKune, Meachum, Mingo, Brown, and Meade. Those cases do not defeat Petitioner's claim because Petitioner is not asking the Court to micromanage ordinary placement. Petitioner is asking the Court to correct unlawful custody caused by an erroneous sentence computation. The primary remedy sought is immediate release or termination of custody, not ordinary placement review.

Seventh, the Government relies on exhaustion cases including Woodford, Gerholdt, Cros-Toure, Gomez-Feliz, and Jaimes. Those cases do not require denial because exhaustion in a § 2241 case is not jurisdictional, and here BOP's own transfers, delays, mail problems, legal-property restrictions, and document-access restrictions made exhaustion unavailable or inadequate.

Eighth, the Government relies on Andrews v. Warden, FPC Talladega, to argue that Grounds 1 through 5 are not cognizable under § 2241. Andrews is distinguishable because Petitioner's present claim is not simply an attack on the underlying conviction or revocation judgment. Petitioner's core claim is that BOP/DSCC is executing the sentence incorrectly by treating the revocation term as a standalone new sentence, refusing to aggregate the sentence, refusing to apply FSA and prerelease credits correctly, and ignoring BOP's own May 14, 2020 computation sheet.

Accordingly, the Government's authorities do not control. They are non-binding, distinguishable, directed to different issues, or overcome by stronger authority.

## V. BOP'S STANDALONE-SENTENCE THEORY IS WRONG

7

The Government's response turns on the assertion that the revocation sentence is a new sentence separate from the original sentence. That is the wrong starting point.

Under Johnson v. United States, post-revocation penalties are attributed to the original conviction. Under Mont v. United States, supervised release is part of the penalty for the original offense. Under United States v. Barrus, revocation imprisonment is a modification of the original sentence, not punishment for a new criminal prosecution.

Petitioner's Florida case was a transferred supervised-release revocation docket. It did not create a new underlying federal conviction. Petitioner was sentenced on December 12, 2025 for alleged technical supervised-release violations. The 36-month term was a revocation modification of the original Connecticut sentence.

BOP/DSCC cannot avoid Johnson, Mont, and Barrus by labeling the revocation term a new standalone sentence for computation purposes. If revocation imprisonment is attributed to the original conviction and is a modification or consequence of the original sentence, BOP must account for the original sentence, the time already served, and the aggregate sentence structure when executing the sentence.

The Government's position also conflicts with 18 U.S.C. § 3584(c), which requires multiple terms of imprisonment to be treated for administrative purposes as a single, aggregate term of imprisonment. This statute directly governs BOP's execution of sentences. BOP cannot ignore it by calling the revocation term "new" and then treating the original sentence as legally irrelevant.

VI. THE GOVERNMENT'S OWN 2013 MATERIALS CONFIRM THIS IS THE ORIGINAL SENTENCE

The Government submitted or relied on approximately 700 pages of materials, including documents from the original 2013 case: the 2013 PSR, the Government's sentencing materials, the Admission of Offense Conduct, transcripts, psychological or medical materials, and the May 14, 2020 computation sheet.

Petitioner submits that most of those materials are irrelevant to the narrow issue before this Court. This § 2241 case concerns BOP's current sentence computation. Petitioner could respond with hundreds of pages of his own 2013 materials, including defense sentencing materials that refute much of what the Government said in 2013, but doing so would distract from the computation question.

At the same time, the Government's use of the 2013 materials confirms Petitioner's principal point. The Government is relying on original-case materials because the revocation sentence derives from the original case. If the December 12, 2025 sentence were truly a new standalone sentence, then a new PSR, new sentencing record, and the constitutional protections required for a new original sentence would have been required. That did not happen.

The Government's own filing answers the central question: by relying on the 2013 PSR, sentencing materials, AOC, transcripts, and May 14, 2020 computation sheet, the Government confirms that the revocation sentence derives from the original Connecticut sentence and must be executed as a continuation or modification of that sentence, not as a new standalone 36-month sentence.

BOP does not write the law. BOP must follow the statutes and controlling court decisions. Here, BOP is not doing so.

9

## VII. THE MAY 14, 2020 COMPUTATION SHEET AND CORRECT AGGREGATE CALCULATION REQUIRE RELIEF

The Government's approximately 700-page production included a computation sheet dated May 14, 2020, the date Petitioner was released on compassionate release. That computation sheet states that Petitioner had served six years, seven months, and twenty-eight days as of that date.

That record confirms BOP's own prior computation of substantial time served on the original Connecticut sentence. Petitioner has now served almost 12 additional months since his June 24, 2025 arrest. BOP is nevertheless calculating the December 12, 2025 revocation sentence as a standalone three-year sentence and ignoring the prior six years, seven months, and twenty-eight days already served as of May 14, 2020.

Petitioner served approximately 80 months before release in 2020. The revocation sentence imposed on December 12, 2025 was 36 months. The corrected aggregate sentence structure is therefore approximately 116 months. The 85% service point on 116 months is approximately 98.6 months.

Petitioner has now served almost 92 months of actual incarceration: approximately 80 months before release in 2020, plus approximately 11.8 months since his June 24, 2025 arrest. Once the sentence is properly aggregated, Petitioner is already within the six-month prerelease/home-confinement window. BOP's erroneous computation has already caused Petitioner to lose Second Chance Act time and earlier home-confinement eligibility.

BOP's records list a home detention eligibility date in September 2027 only because BOP is using the wrong sentence structure. That date is based on the 36-month Florida revocation term

10

alone. It ignores the original Connecticut sentence and the approximately 80 months already served.

## VIII. FIRST STEP ACT CREDITS AND BOP'S DELAYS SUPPORT RELIEF

BOP's own FSA records show credits toward RRC/home confinement. BOP also appears to take the position that Petitioner cannot receive FSA credits toward early release because there is no term of supervised release to follow.

Petitioner does not concede that BOP's position is correct. However, even under BOP's own framing, earned FSA credits cannot be treated as meaningless. The First Step Act provides that credits shall be applied toward prerelease custody or supervised release. If there is no supervised-release term to accelerate, then the credits must be applied toward prerelease custody, including RRC or home confinement.

The Government's own response confirms that Petitioner began earning FSA credits toward prerelease custody at FCI Beckley on April 15, 2026. Petitioner has therefore earned at least 20 days of FSA credits from April 15, 2026 through June 15, 2026 at the 10-days-per-30-days rate.

But because Petitioner is already within the six-month prerelease/home-confinement window under the corrected aggregate sentence, merely ordering future home-confinement consideration is no longer adequate. BOP's unlawful computation already deprived Petitioner of meaningful Second Chance Act and home-confinement time.

BOP also cannot use its own delays, transfers, and designation practices to deny FSA and prerelease relief. Petitioner was in continuous federal custody. BOP and the United States Marshals controlled the timing, movement, access to programming, legal mail, legal property,

11

and records. Petitioner should not be penalized because BOP delayed designation, delayed access to programs, or moved him through holdover facilities where programming was unavailable.

Mont also supports Petitioner's custody argument because the Supreme Court recognized that imprisonment includes pretrial detention later credited as time served, and that custody status can affect supervised-release calculations. Petitioner has been in continuous custody since June 24, 2025, and BOP cannot count that custody for some purposes while ignoring it for sentence-execution, FSA, prerelease, and jurisdictional consequences.

## IX. THE MISSING DOCKET ENTRIES AND § 3583(e) TERMINATION ISSUE MATTER

The Government does not meaningfully address the jurisdictional and docket-record concerns raised by Petitioner.

Petitioner has repeatedly requested disclosure of docket entries 2 through 7 and related transfer/jurisdiction materials from the Middle District of Florida supervised-release transfer docket. Those docket entries may show whether the Florida court terminated supervised release or closed/terminated the case on or about November 22, 2024, before later reopening the matter after Probation Officer Padilla presented alleged violations.

The missing docket entries and the apparent "case closed" or "terminated" entry are material because 18 U.S.C. § 3583(e) gives a district court separate powers: the power to terminate supervised release and discharge the defendant under § 3583(e)(1), and the power to revoke supervised release and impose imprisonment under § 3583(e)(3).

12

Those powers are different. Termination ends supervision. Revocation imposes consequences for a violation while the term remains active. If the Florida court terminated supervised release or closed/terminated the transferred supervision matter on or about November 22, 2024, that would directly affect whether the court later had jurisdiction to reopen the case, issue a warrant, or impose a revocation sentence based on alleged violations.

In Johnson v. United States, the Supreme Court explained that to "terminate" a term of supervised release is to end it. Johnson, 529 U.S. 694, 704 (2000). The point matters here because docket entries 2 through 7 may show whether supervision was terminated, closed, or otherwise ended before the later warrant and revocation proceedings.

The Government has not meaningfully addressed this issue. Instead, it relies on old 2013 materials while failing to produce the missing docket entries or explain the apparent "case closed" or "terminated" status. If supervised release was terminated or the transferred matter was closed in a way that ended supervision, then the later reopening, warrant, and revocation raise serious jurisdictional questions.

## X. THE COURT SHOULD STRIKE, DISREGARD, OR SEAL IRRELEVANT AND PREJUDICIAL 2013 MATERIALS

The Government's response includes or relies on materials from the original 2013 case that are irrelevant to the narrow § 2241 sentence-execution issue now before this Court. Petitioner respectfully requests that the Court strike, disregard, or seal those materials to the extent they are irrelevant, prejudicial, sealed, private, or unnecessary to decide the computation issue.

This includes the document titled "Admission of Offense Conduct" or "AOC." Petitioner disputes the reliability and authenticity of that document. Petitioner has previously argued that,

13

during the 2013 change-of-plea proceedings, the prosecutor took the AOC from the courtroom, made material changes, and returned it. Petitioner was then asked to sign the document as the judge entered the courtroom. Petitioner signed the bottom of the front page, did not read the full document, and later learned that the document was materially changed and was three pages long. Petitioner raised this issue in the Connecticut proceedings. Petitioner argued this in the Connecticut court in the presence of prosecutor Christopher W. Schmeisser, who did not deny it, and Petitioner's attorney James W. Bergenn admitted at the 2018 § 2255 hearing that changes were made. Petitioner submits that the Connecticut court denied § 2255 relief without addressing this issue.

Petitioner does not ask this Court to resolve the full 2013 AOC dispute in this § 2241 proceeding. But the Government should not be permitted to use the disputed AOC to prejudice this Court in a sentence-computation habeas case. The AOC is not necessary to determine whether BOP must aggregate the sentence, whether BOP may treat the revocation term as a new standalone sentence, whether Petitioner has served approximately 80 months already, or whether BOP must apply First Step Act and prerelease credits.

Petitioner also objects to any unsealed filing of sealed medical, psychological, or mental-health records from the Connecticut case. If those records were sealed in Connecticut, they should remain sealed here. Even if they were not sealed on this docket, they contain sensitive personal information and should be sealed or redacted. Their public filing serves no legitimate purpose in deciding this § 2241 computation dispute and creates unnecessary prejudice and potential harm.

## XI. TRANSCRIPT, LEGAL MAIL, LEGAL PROPERTY, LAW-LIBRARY, AND MEDICAL ISSUES REQUIRE EMERGENCY REVIEW

The Government characterizes Petitioner's filings as frivolous, an "onslaught," or an abuse of the process. Petitioner disputes that characterization. Petitioner's filings seek transcripts, sentence-computation records, legal mail, legal property, and correction of an ongoing sentence-execution error. Those issues are not frivolous.

If Petitioner's filings were truly frivolous, there would be no legitimate reason for the extraordinary delay in providing transcripts, source recordings, docket records, and computation documents necessary to resolve the claims. The transcript and record issues have now remained unresolved for months while Petitioner remains incarcerated and while deadlines in the Eleventh Circuit and this § 2241 case continue to run.

Petitioner does not ask this Court to assume misconduct without proof. However, the combination of delayed transcripts, restricted access to transcripts, missing or incomplete docket materials, lack of access to original audio or source recordings, and inconsistent descriptions of events creates a reasonable need for verification. Petitioner respectfully requests that the Court require production of the original audio recordings, all transcript drafts or versions, certification records, court-reporter information, redaction requests, and any communications concerning preparation, correction, alteration, or withholding of transcripts.

Petitioner's ability to respond was also obstructed by delayed legal mail, opened legal mail, withheld legal property, limited law-library access, and repeated transfers. The Government's response and approximately 700 pages of attachments were not meaningfully available to Petitioner until June 15, 2026, when he was able to review them in the case manager's office. Petitioner was not permitted to keep the documents in his possession.

Petitioner also has serious medical risk. He previously suffered a heart attack during BOP transit and underwent open-heart surgery. Petitioner was approved at FCI Beckley Satellite Prison Camp to see a cardiologist, and that approval was entered in the system on or about May 7, 2026. Despite that approval, Petitioner has not yet been taken to a cardiologist. Petitioner has now been in BOP custody for approximately one year without seeing a cardiologist.

This medical delay supports expedited review because continued custody under an erroneous computation is not merely a legal injury; it creates ongoing medical risk. The combination of sentence-computation error, loss of prerelease time, delayed cardiology care, and continuing access-to-courts problems supports immediate release, termination of custody, or any available sentence-reduction, compassionate-release-related, equitable, or remedial relief.

## XII. RETALIATION AND TRANSFER PREJUDICE SUPPORT EXPEDITED RELIEF

Petitioner requests protection from further retaliation. The facts show a pattern that appears retaliatory and that has prejudiced Petitioner's ability to litigate this § 2241 case and related appeals.

Petitioner was transferred after filing the § 2241 petition and then moved through multiple facilities while attempting to litigate the petition. These transfers interfered with legal mail, transcripts, legal property, legal documents, and communication with the Court. BOP designated Petitioner to FCI Beckley Satellite Prison Camp, approximately 724 miles from his release address, despite his short sentence and despite the corrected aggregate computation placing him in or near the prerelease/home-confinement window.

16

Petitioner fears further retaliation because he is continuing to litigate this § 2241, requesting DSCC review, challenging BOP's standalone-sentence theory, seeking transcripts and source recordings, and requesting relief for legal mail, property, medical, law-library, and access-to-courts violations. Petitioner requests an order prohibiting retaliatory transfer, restriction of legal materials, interference with legal mail, or delay in medical care based on this litigation.

## XIII. ALTERNATIVE SENTENCE-REDUCTION OR COMPASSIONATE-RELEASE-RELATED RELIEF

Petitioner's primary claim is a § 2241 sentence-execution claim. However, to the extent the Court concludes that habeas relief alone is not the proper vehicle to end custody, Petitioner requests that the Court treat this filing, in the alternative, as seeking any available sentence-reduction, compassionate-release-related, equitable, or remedial relief necessary to end unlawful custody.

Courts considering sentence-reduction motions may consider intervening changes in law and fact. Here, the relevant changes and facts include BOP's erroneous aggregation analysis, First Step Act implementation failures, Giovinco, Gonzalez, Benson, Barrus, Johnson, Mont, the May 14, 2020 computation sheet, the loss of prerelease time, and delayed cardiology care.

The Court should not allow the form of relief to defeat the substance of the claim. If immediate habeas release is not granted, the Court should order any available remedial, equitable, sentence-reduction, sanction-related, or compassionate-release-related relief necessary to prevent continued unlawful custody and serious medical risk.

## XIV. REQUESTED RELIEF

17

For the reasons stated above, Petitioner respectfully replies to the Government's response and requests that this Court:

1. reject the Government's exhaustion argument and find exhaustion excused, unavailable, satisfied, or not a bar to review;

2. reject the Government's argument that the petition is not cognizable under § 2241 as to the sentence-execution and computation issues;

3. order Respondent, BOP, DSCC, and FCI Beckley Satellite Prison Camp to show cause why immediate release, termination of custody, corrective relief, protection from retaliation, sealing or striking of improper materials, transcript/source-recording production, medical-record production, or sanctions should not issue;

4. find that Petitioner arrived at FCI Beckley Satellite Prison Camp on April 15, 2026;

5. find that Petitioner filed this § 2241 while in temporary holdover status at FDC Miami and that BOP's later transfer to FCI Beckley does not defeat this Court's jurisdiction;

6. find that Petitioner was not able to meaningfully review the Government's response and cited cases until June 15, 2026, because BOP restricted access to the approximately 700-page response and attachments;

7. accept this filing as timely and necessary because Petitioner could not previously review and address the Government's cited cases;

8. find that the Government's cited cases are distinguishable and do not overcome Johnson, Mont, Barrus, 18 U.S.C. § 3584(c), 18 U.S.C. § 3632, Program Statement 5880.28, Giovinco, Gonzalez, and the May 14, 2020 computation sheet;

9. find that the Government's reliance on 2013 materials confirms that the December 12, 2025 revocation sentence derives from and continues the original Connecticut sentence rather than creating a new standalone sentence;

10. find that the Government's own computation argument confirms BOP is calculating only the 36-month revocation term, using 170 days of prior custody credit, 162 days of GCT, and a January 2028 projected release date;

11. find that the Government's own response confirms Petitioner began earning FSA credits toward prerelease custody at FCI Beckley on April 15, 2026;

12. disregard inflammatory and prejudicial characterizations of Petitioner's pro se filings as "frivolous," an "onslaught," or "abuse," because those characterizations are irrelevant to the sentence-computation issue;

13. find that BOP/DSCC improperly classified Petitioner's December 12, 2025 revocation sentence as a new standalone 36-month sentence rather than a modification or continuation of the original Connecticut sentence;

14. order BOP/DSCC to aggregate the sentence as approximately 116 months, consisting of approximately 80 months already served plus the 36-month revocation modification;

15. find that Petitioner has completed almost 92 months of actual incarceration and is already within the six-month prerelease/home-confinement window under the corrected aggregate calculation;

16. find that the May 14, 2020 computation sheet confirms Petitioner had already served six years, seven months, and twenty-eight days before release on compassionate release;

17. find that BOP's erroneous computation has already caused Petitioner to lose Second Chance Act time and earlier home-confinement eligibility;

19

18. find that merely ordering future home-confinement consideration is inadequate because Petitioner has already been deprived of timely prerelease placement;

19. find that § 3583(e) separately authorizes termination and revocation, and that the missing docket entries are material to whether the later warrant and revocation proceedings were jurisdictionally valid;

20. order Respondent to produce docket entries 2 through 7 and any docket, order, minute entry, or transfer record showing whether supervised release was terminated, closed, discharged, or otherwise ended on or about November 22, 2024;

21. find that the Government has not explained whether the apparent "case closed" or "terminated" entry reflected termination under 18 U.S.C. § 3583(e)(1), administrative closure, transfer acceptance, or some other jurisdictionally significant event;

22. order Petitioner's immediate release and termination of custody as habeas relief;

23. alternatively, order immediate release as a remedial sanction or corrective order for BOP/DSCC's continuing sentence-computation violations, delayed medical care, and access-to-courts violations;

24. alternatively, treat this filing as seeking any available sentence-reduction, compassionate-release-related, equitable, or remedial relief necessary to end unlawful custody;

25. order BOP to immediately apply all available First Step Act credits, including at least 20 days earned from April 15, 2026 through June 15, 2026, toward prerelease custody and release-related relief;

26. order BOP, DSCC, and FCI Beckley Satellite Prison Camp to cease any retaliatory transfer, restriction of legal materials, interference with legal mail, delay in medical care,

or other adverse action based on this § 2241 case, appeals, DSCC correspondence, transcript requests, medical requests, or sentence-computation challenges;

27. order Respondent and BOP to explain why Petitioner was designated to FCI Beckley Satellite Prison Camp approximately 724 miles from his release address despite having a short sentence and a claimed corrected aggregate computation placing him in the prerelease/home-confinement window;

28. order Respondent and BOP to produce the complete sentence-computation record, DSCC correspondence, SENTRY records, First Step Act records, PATTERN assessments, Needs Assessments, progress report, transfer/travel records, property records, legal-mail records, and all records explaining why BOP/DSCC is ignoring the May 14, 2020 computation sheet;

29. order Respondent to produce the complete Government attachment index and identify which documents were filed publicly, sealed, or under restriction;

30. order Respondent to identify whether the medical, psychological, or mental-health records attached to the Government's response were sealed in the District of Connecticut and whether they have been sealed or restricted in this Court;

31. order the immediate sealing or redaction of any medical, psychological, mental-health, or previously sealed Connecticut records filed by the Government;

32. strike, disregard, or give no weight to the disputed Admission of Offense Conduct and other irrelevant 2013 materials because they are unnecessary to resolve the sentence-computation issues in this § 2241 case;

33. order production of the original audio recordings for the relevant revocation proceedings, all transcript drafts or versions, certification records, court-reporter information, redaction

requests, and any communications concerning preparation, correction, alteration, or withholding of transcripts;

34. order Respondent and BOP to produce all medical records, referral records, consultation approvals, scheduling records, and communications concerning Petitioner's cardiology referral approved on or about May 7, 2026;

35. order Respondent and BOP to explain why Petitioner has not yet been taken to a cardiologist despite the May 7, 2026 approval and Petitioner's history of heart attack and open-heart surgery;

36. order FCI Beckley Satellite Prison Camp to allow Petitioner to possess, review, and use necessary legal materials, including transcripts, docket sheets, computation records, Government response materials, exhibits, psychological evaluations, and appeal documents, or at minimum provide daily meaningful access without staff reading privileged legal work;

37. order FCI Beckley Satellite Prison Camp to immediately release Petitioner's legal property and legal work;

38. order FCI Beckley Satellite Prison Camp to deliver all legal mail currently being held and to timely deliver all future legal mail;

39. order FCI Beckley Satellite Prison Camp to stop opening properly marked legal mail outside Petitioner's presence;

40. order FCI Beckley Satellite Prison Camp to provide reasonable law-library access consistent with 28 C.F.R. § 543.11;

41. permit Petitioner to file any additional supplement necessary after receiving legal mail, legal property, law-library access, transcript/audio records, cardiology/medical records, and complete sentence-computation records; and

42. grant any other habeas, equitable, remedial, sanction-related, anti-retaliation, medical, sealing, striking, transcript-related, or access-to-courts relief necessary to correct the sentence computation, prevent continued over-incarceration, and remedy BOP's continuing violations.

## XV. CONCLUSION

Petitioner was not able to meaningfully read the Government's response or review the Government's cited cases until June 15, 2026, because BOP restricted his access to the approximately 700-page response and attachments.

Petitioner has served approximately 80 months on the original Connecticut sentence and almost 12 additional months since his 2025 arrest. BOP/DSCC is refusing to aggregate the sentence and is treating the December 12, 2025 revocation modification as a new standalone 36-month sentence. That classification violates Johnson, Mont, Barrus, § 3584(c), Giovinco, Gonzalez, § 3632, and Program Statement 5880.28.

The May 14, 2020 computation sheet confirms that Petitioner had already served six years, seven months, and twenty-eight days before release on compassionate release. BOP cannot ignore that prior custody while calculating the revocation modification as a new standalone sentence.

The Government's own 2013 materials confirm that this case remains tied to the original Connecticut sentence. If this were truly a new standalone sentence, new sentencing protections

23

and a new sentencing record would have been required. Instead, the Government relies on the original 2013 case materials, which confirms that the revocation sentence is a continuation, modification, or consequence of the original sentence.

The missing docket entries and apparent "case closed" or "terminated" status also matter because § 3583(e) gives a court separate authority to terminate supervised release and to revoke supervised release. If supervision was terminated or the transferred matter was closed in a way that ended supervision, then the later reopening, warrant, and revocation raise serious jurisdictional issues that the Government has not addressed.

Petitioner is already within the six-month prerelease/home-confinement window under the corrected aggregate calculation. Because BOP's unlawful computation has already deprived Petitioner of meaningful Second Chance Act and home-confinement time, home confinement is no longer an adequate primary remedy.

Petitioner also has serious medical risk. He previously suffered a heart attack during BOP transit and underwent open-heart surgery. He was approved at FCI Beckley Satellite Prison Camp for a cardiology appointment on or about May 7, 2026, but he has not yet been taken to a cardiologist. He has been in BOP custody for approximately one year without seeing a cardiologist.

The Court should reject the Government's response, order Respondent, BOP, DSCC, and FCI Beckley Satellite Prison Camp to show cause, require production of the computation, transcript, source-recording, sealing, transfer, medical, and access-to-courts records, correct the sentence computation, strike or seal improper materials, protect Petitioner from further retaliation, and

24

order immediate release, termination of custody, or other remedial relief necessary to cure the

ongoing unlawful custody.

Respectfully submitted,

Dated: June 18, 2026

*Robert Rivernider*

With Permission

ELECTRONIC SIGNATURE:/s/ Robert Rivernider
Robert Rivernider, Pro Se

Robert Rivernider
Reg. No. 96006-004
FCI Beckley Satellite Prison Camp
P.O. Box 350
Beaver, WV 25813

## CERTIFICATE OF SERVICE

I certify that on this 18ᵗʰ day of June, 2026, a true and correct copy of the foregoing Petitioner's Reply to Government's Response and Emergency Motion for Expedited Consideration and Order to Show Cause was served by United States Mail, postage prepaid, addressed to:

Alicia E. Shick
Assistant United States Attorney
United States Attorney's Office
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394

Counsel for Respondent

Respectfully submitted,

*Robert Rivernider*

With Permission

ELECTRONIC SIGNATURE:/s/ Robert Rivernider
Robert Rivernider, Pro Se

Robert Rivernider
Reg. No. 96006-004
FCI Beckley Satellite Prison Camp
P.O. Box 350
Beaver, WV 25813

# Exhibit A — BOP/FSA Computation Packet

# FSA Time Credit Assessment

Register Number:96006-004, Last Name:RIVERNIDER

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 96006-004 | Responsible Facility: BEC |
| Inmate Name | Assessment Date.....: 05-29-2026 |
| Last............: RIVERNIDER | Period Start/Stop...: 04-15-2026 to 05-29-2026 |
| First...........: ROBERT | Accrued Pgm Days....: 44 |
| Middle..........: | Disallowed Pgm Days.: 0 |
| Suffix..........: | FTC Towards RRC/HC..: 10 |
| Gender..........: MALE | FTC Towards Release.: 0 |
| Start Incarceration: 12-12-2025 | Apply FTC to Release: No |

--- **FTC Claim Status** -----------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-15-2026 | 05-29-2026 | accrue | 44 |
| | | disallow | 0 |

  **Cannot apply FTC(s) towards early release.**

  **No term of supervision**

--- **Program Day Intervals** ----------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 04-15-2026 | 05-29-2026 | accrue | 44 |

  Accrued Pgm Days...: 44
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 10

--- **FSA Assessment(s)** -------------------------------------------------------------

| # | Start | Stop | Assignment | Asn Start | Factor |
|---|---|---|---|---|---|
| 001 | 04-15-2026 | 05-13-2026 | R-LW | 04-27-2026 12:34 | 10 |
| 002 | 05-13-2026 | 11-09-2026 | R-LW | 04-27-2026 12:34 | 10 |

FSA Time Credit Assessment

Register Number: 95008-004, Last Name: RIVERMICKE

U.S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ---
All conditional days and conditional dates below are the individual's best case scenario
given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of
05-29-2026. These dates can change if there are changes to one or more of the following: the
individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT
OF 0 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR
REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT
ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1) THE RESOURCES OF THE
FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND
CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE:
(a) CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE
WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND
(5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 01-13-2028
Projected Release Method: GCT FEL
FSA Projected Release Date: N/A
FSA Projected Release Method: N/A
FSA Conditional Release Date: N/A
SCA Recommended Placement Days (Following 5 Factor Review): 150
SCA Recommended Placement Date: 08-16-2027
SCA Max. Statutory RRC Placement Days if appropriate (lesser of 6 months/10%): 195
FSA Conditional Placement Days: 150
FSA Conditional Placement Date: 08-16-2027
Conditional Transition To Community Date: 03-15-2027
Max. Statutory RRC Placement Date (if approp.): 04-29-2027
Recommended RRC Placement Date (if approp.): 04-29-2027

```
BECLG  540*23 *          SENTENCE MONITORING          *      04-21-2026
PAGE 001         *         COMPUTATION DATA           *      07:32:43
                          AS OF 04-21-2026
```

REGNO..: 96006-004 NAME: RIVERNIDER, ROBERT


```
FBI NO...........: 242344KD8          DATE OF BIRTH: 08-26-1965  AGE:   60
ARS1.............: BEC/A-DES
UNIT.............: 5 SCP               QUARTERS.....: E01-102L
DETAINERS........: NO                  NOTIFICATIONS: NO
```

FSA ELIGIBILITY STATUS IS: INELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 09-28-2027

THE INMATE IS PROJECTED FOR RELEASE: 01-14-2028 VIA GCT REL


```
              RELEASE AUDIT COMPLETED ON 03-12-2026 BY DSCC
----------------------CURRENT JUDGMENT/WARRANT NO: 020 ----------------------
```

```
COURT OF JURISDICTION...........: FLORIDA, MIDDLE DISTRICT
DOCKET NUMBER...................: 5:24-CR-138-TPB-PRL
JUDGE...........................: BARBER
DATE SENTENCED/PROBATION IMPOSED: 12-18-2013
DATE SUPERVISION REVOKED........: 12-12-2025
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 04-15-2026
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO
```

```
                FELONY ASSESS  MISDMNR ASSESS  FINES      COSTS
NON-COMMITTED.: $1,800.00      $00.00          $00.00     $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00
```

```
------------------------CURRENT OBLIGATION NO: 010 ----------------------------
OFFENSE CODE....:  820     COMMUNICATIONS ACT
```

```
OFF/CHG: 18:1349 CONSPIRACY TO COMMIT WIRE FRAUD, CT 1 & 9
         18:1343 WIRE FRAUD, CT.S 2-8 & CT'S 10-18
```

```
 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:    3 YEARS
 DATE OF OFFENSE................: 04-01-2008
```


G0002      MORE PAGES TO FOLLOW . . .



Image reflects quality of original submission

## 6. HOW TO EARN FTCs
## § 523.42 Earning First Step Act Time Credits.

(a)   *When an eligible inmate begins earning FSA Time Credits.* **An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the**
(a)      sentence will be served).

Because the ability to accrue time credits begins after the inmate's current term of incarceration begins (e.g., the date the inmate arrives at or voluntary surrenders to their initially designated Bureau facility to serve their sentence), an inmate cannot earn FTCs during pretrial confinement, nor can they earn credits based on a prior incarceration. Further, an inmate cannot earn FTC when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility, regardless of where they are housed, or once released to their supervised release term.

(b)   *Dates of participation in EBRRs or PAs.*
(1)   **An inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018.**
(2)      **An eligible inmate, as defined in this subpart, may earn FSA Time Credits for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020.**
(3)   **An eligible inmate, as defined in this subpart, may earn FSA Time Credit if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment on or after January 15, 2020.**
(c)   *Amount of FSA Time Credits that may be earned.*
(1)      **For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn ten days of FSA Time Credits.**
(2)      **For every thirty-day period that an eligible inmate has successfully participated in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, that inmate will earn an additional five days of FSA Time Credits if the inmate:**
(i)   **Is determined by the Bureau to be at a minimum or low risk for recidivating; and**
(ii)   **Has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and needs assessments conducted by the Bureau.**

The calculation of FTCs is fully automated and based on the number of 30-day periods in earning status. Additionally, the

progstat                                    1

' 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

eligibility to earn FTCs is distinct from the ability to apply/use FTCs.

For inmates in prerelease custody, "the most recent two consecutive risk assessments" refers to the final two risk assessments conducted while the inmate was at a BOP institution, prior to the application of FTCs, i.e., the inmate's transfer to supervised release or prerelease custody. For those inmates who have not completed two assessments prior to transfer to prerelease custody, reassessments will be completed automatically on a monthly basis and will capture changes which occur during prerelease placement.

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*[illegible handwritten form header lines]*

Name _____ V.A. Coronado _____ Date ___ 26-22

Substitute Additional or Amended Counsel/Counsel Information is as follows:

Name __ Elena Lalli Coronado, __

Firm __ United States Attorney's Office - District of Connecticut __

Address __ 1000 Lafayette Boulevard, 10th Floor __

Telephone __ (203) 696-3000 __ Fax: __ (203) 579-5575 __

Email __ Elena.Coronado@usdoj.gov __

Appearance for __ United States of America __
(party/designation)

Select One:

☑ Substitute counsel, replacing lead counsel: __ Conor M. Reardon, U.S. Attorney's Office of the District of Connecticut. __
(name, firm)

☐ Substitute counsel, replacing other counsel: _____ )
(name/firm)

☐ Additional counsel, co-counsel with: _____ )
(name, firm)

☐ Amicus in support of: _____ )
(party/designation)

## CERTIFICATION

I certify that:

☑ I am admitted to practice in this Court and, if required by Interim Local Rule 46.1(a)(2), have renewed

my admission on __ November 21, 2023 __ _____ OR

☐ I applied for admission on: _____ .

Signature of Counsel: __ /s/ Elena Lalli Coronado __

Type or Print Name: __ Elena Lalli Coronado __

## Exhibit B — DSCC Response Letter

43

**Robert Rivernider**
**c/o Beckley FCI**
**Federal Register No. 96006-004**
**Case Number 5:24-cr-138-TPB-PRL (SRV)**

This letter is in response to your correspondence sent to the Bureau of Prisons, Designation and Sentence Computation Center, wherein you claim your federal sentence has been calculated incorrectly. You believe you are missing unspecified jail credit. You indicate you have been in custody since June 24, 2025. While you do not specify what time you contend is missing, you indicate you will be overserved according to the current calculation.

Following our review, you were sentenced on the above case on December 12, 2025, to a 3-year term of confinement. You were arrested on June 24, 2025, and remained in continuous custody since that date. Your sentence commenced on the date it was imposed, the earliest possible date, December 12, 2025. Prior custody credit beginning June 24, 2025, through December 11, 2025, was applied. You are projected to earn 162 days of good conduct time (GCT). As all prior custody credit has been applied to your federal sentence, you are not entitled to any additional credit.

Your projected release date is January 13, 2028, via GCT Release.

Your sentence has been computed as directed by federal statute, and Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984).

I trust this has addressed your concerns.

**Exhibit C — May 14, 2020 Computation Sheet**

44

```
MIMJF                            PUBLIC INFORMATION              *      05-08-2026
PAGE 005 OF 005  *                  INMATE DATA                  *      11:33:21
                                 AS OF 05-14-2020


REGNO..: 96006-004 NAME: RIVERNIDER, ROBERT


                RESP OF: BEC
                PHONE..: 304-252-9758     FAX: 304-256-4956
----------------------------------PRIOR COMPUTATION NO: 010 ----------------------------


COMPUTATION 010 WAS LAST UPDATED ON 02-05-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 02-04-2014 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:    010 010

DATE COMPUTATION BEGAN..........: 01-29-2014
TOTAL TERM IN EFFECT............:    144 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     12 YEARS
EARLIEST DATE OF OFFENSE........: 04-01-2008

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     11-05-2010     03-18-2011

TOTAL PRIOR CREDIT TIME.........: 134
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 648
TOTAL GCT EARNED................: 324
STATUTORY RELEASE DATE PROJECTED: 12-08-2023
ELDERLY OFFENDER TWO THIRDS DATE: 09-17-2021
EXPIRATION FULL TERM DATE.......: 09-16-2025
TIME SERVED.....................:      6 YEARS      7 MONTHS      28 DAYS
PERCENTAGE OF FULL TERM SERVED..:   55.4
PERCENT OF STATUTORY TERM SERVED:   65.1

ACTUAL SATISFACTION DATE........: 05-14-2020
ACTUAL SATISFACTION METHOD......: CMPSNT REL
ACTUAL SATISFACTION FACILITY....: EST
ACTUAL SATISFACTION KEYED BY....: JLD

DAYS REMAINING..................: 1951
FINAL PUBLIC LAW DAYS...........: 0




G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

Image reflects quality of original submission

**Exhibit D — Legal Mail Envelope / Opened Legal Mail**

45

U.S. Department of Justice

United States Attorney's Office

[illegible]

**CERTIFIED MAIL**

9589 0710 5270 1603 7594 94

6-6-26

YOUR CORRESPONDENCE
DOES NOT MEET
THE LEGAL MAIL CRITERIA

Robert Rivernider
Reg. # 96006-004
FCI Beckley, Satellite Camp
P.O. Box 350
Beaver, WV 25813

FEDERAL CORRECTIONAL INSTITUTION
BECKLEY, WV

LEGAL MAIL RECEIVED
MAILROOM STAFF: [illegible]
DATE/TIME: 6/11/26 9:28AM

25813-035050

**LEGAL MAIL**
**OPEN IN THE PRESENCE OF INMATE**



**INITIATIVE**
Certified Sourcing
www.sfiprogram.org
SFI-00081

PAPER
POUCH

# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL®

ted delivery date specified for domestic use.

stic shipments include $100 of insurance (restrictions apply).*

Tracking® service included for domestic and many international destina

d international insurance.**

used internationally, a customs declaration form is required.

does not cover certain items. For details regarding claims exclusions see the
Mail Manual at *http://pe.usps.com.*

national Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

# T RATE ENVELOPE

ATE ■ ANY WEIGHT

# CKED ■ INSURED

To schedule free Package Pickup,
scan the QR code.


S 0001000014

**EP14F November 2025**
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

---



UNITED STATES POSTAL SERVICE®

**Click-N-Ship®**

usps.com
$11.12
US POSTAGE

9405 5301 0935 5394 2247 99 0111 2001 0003 3401

U.S. POSTAGE PAID

06/17/2026
1 lb 0 oz

Mailed from 34785   616900705241614

## PRIORITY MAIL®

ROBERT RIVERNIDER
14 S BOBWHITE RD
WILDWOOD FL 34785-9011

Created 2026-06-17
Flat Rate Envelope

RDC 03

C028

SOUTHERN DISTRICT OF FLORIDA
CLERK OF THE COURT
701 CLEMATIS ST RM 202
WEST PALM BEACH FL 33401-5113

### USPS TRACKING #

**9405 5301 0935 5394 2247 99**

LEGAL MAIL
CaseNo1-26-cv-22376DMM



SKNA